2005 UT 22

**Glade Leon PARDUHN, Plaintiff and Appellant,**

v.

**Natalie Buchi BENNETT, Allison Buchi, Annabelle Buchi, Lance Buchi, Jessica Buchi, and Joanne Buchi, Defendants and Appellees.**

**University Texaco Partnership, Intervenor and Appellant.**

No. 20030551.

Supreme Court of Utah.

April 8, 2005.

P. Bryan Fishburn, Salt Lake City, for Parduhn.

Dennis L. Mangrum, Salt Lake City, and Martin S. Tanner, Sandy, for the Buchi children.

Tim Dalton Dunn, Susan B. Black Dunn, Salt Lake City, for Joanne Buchi.

Nanci Snow Bockelie, Salt Lake City, for University Texaco.

PARRISH, Justice:

¶ 1 This is the latest battle in a seven-year war over $300,000 worth of life insurance proceeds. Glade Parduhn comes to us for the second time, claiming, as he did in a petition for rehearing filed after our resolution of his first appeal, that we erroneously remanded his case to the district court for an equitable distribution of the insurance proceeds he seeks. He also assails the distribution itself, in which the district court awarded the proceeds to the wife and children of his deceased business partner. University Texaco Company ("University Texaco"), the business Parduhn and his former partner operated, appeals the district court's denial of its motion to intervene in the distribution proceedings and, like Parduhn, questions the equity of the distribution. We affirm both the district court's denial of University Texaco's motion to intervene and its equitable distribution of the insurance proceeds.

## BACKGROUND

¶ 2 In 1979, Glade Parduhn and Brad Buchi formed University Texaco, a partnership, for the purpose of owning and operating a gas station business. Their partnership agreement included a buy-sell agreement, which provided a mechanism for continuing the partnership in the event one of the partners died. The buy-sell agreement contemplated that each partner would purchase a life insurance policy designating the other as beneficiary. Upon the death of one of the partners, the surviving partner would use the proceeds from the insurance policy to purchase the deceased partner's interest in the partnership from the deceased partner's heirs. Initially, Parduhn and Buchi each purchased $20,000 worth of coverage, but they twice increased the amount of coverage in subsequent years. The last increase, which they obtained without explicitly amending the buy-sell agreement, raised the amount of coverage to $300,000 on Buchi's life and $250,000 on Parduhn's life.

¶ 3 In 1997, Parduhn and Buchi sold the gas stations comprising their business to Blackett Oil Company ("Blackett Oil"). Later that year, Buchi died unexpectedly. Buchi's daughter, Natalie Buchi Bennett ("Bennett"), claimed entitlement to the proceeds from the insurance policy on Buchi's life and instructed the life insurance company not to distribute the proceeds to Parduhn.

¶ 4 Parduhn filed a declaratory judgment action against Bennett, claiming that he was entitled to the policy proceeds. The insurer interpleaded the proceeds, and Buchi's wife and remaining children (collectively, with Bennett, the "Buchi survivors") were joined as parties.[1] The Buchi survivors counterclaimed, asserting that they were entitled to the proceeds. Following a trial,[2] the district court awarded the proceeds to the Buchi survivors and the remaining partnership assets to Parduhn, concluding that both the partnership and the buy-sell agreement survived the sale of the gas stations. The district court also concluded that the insurance policy on Buchi's life only ambiguously designated Parduhn as beneficiary and that, at any rate, Buchi intended his heirs, not Parduhn, to receive the proceeds.

¶ 5 Parduhn appealed to this court. We concluded that (1) the insurance policy on Buchi's life unambiguously designated Parduhn as beneficiary, (2) the transfer of the partnership's business assets to Blackett Oil dissolved the partnership, and (3) the buy-sell agreement was dissolved along with the partnership. *Parduhn v. Bennett*, 2002 UT 93, ¶ 18, 61 P.3d 982 ("*Parduhn I*"). Although Parduhn was the designated policy beneficiary, we held that he could not legally collect the proceeds because he had lost his insurable interest in Buchi's life upon the dissolution of the partnership and the termination of the buy-sell agreement. *Id.* at ¶ 16. In so holding, we relied on Utah Code section 31A–21–104(1)(b), which requires that any person seeking to collect insurance proceeds have an insurable interest in the deceased, and on Utah Code section 31A–21–104(2)(a), which states that a partner has an insurable interest in the life of a copartner only if the

"insurance contracts . . . are an integral part of a legitimate buy-sell agreement respecting . . . a partnership interest in the business." *Id.*; Utah Code Ann. § 31A–21–104(1)(b), (2)(a) (1999).[3] Having concluded that Parduhn could not collect the insurance proceeds as a matter of law, we remanded the case to the district court with instructions to equitably distribute the proceeds pursuant to Utah Code section 31A–21–104(5). *Parduhn I*, 2002 UT 93 at ¶ 17, 61 P.3d 982; *see* Utah Code Ann. § 31A–21–104(5).

¶ 6 Parduhn petitioned for rehearing pursuant to rule 35 of the Utah Rules of Appellate Procedure, asserting that *Parduhn I* was incorrect in three respects. First, he contended that section 31A–21–104 was an affirmative defense that the Buchi survivors should have raised in a responsive pleading pursuant to rules 12(b) and 8(c) of the Utah Rules of Civil Procedure. Because they first raised that defense in a motion filed after the deadline for amending pleadings, Parduhn asserted that they had waived it and that our remand to the district court for an equitable distribution under section 31A–21–104 was therefore erroneous. Second, Parduhn took issue with our conclusion that section 31A–21–104(2)(a) limits a partner's insurable interest in the life of his copartner to those partnerships with valid buy-sell agreements. Finally, Parduhn challenged our holding that an insurance policy beneficiary could collect on a policy only if he had an insurable interest at the time the insurance proceeds were distributed. We denied Parduhn's motion for rehearing without discussion.

¶ 7 On remand, University Texaco sought to intervene in the equitable distribution proceedings. The district court denied the mo-

---

1. Buchi's wife, Joanne Buchi, joined the action both in her individual capacity and as the personal representative of Buchi's estate.

2. Pursuant to the district court's order, the trial was limited to issues pertaining to the modification of the partnership agreement, the status of the buy-sell agreement, and Parduhn's entitlement to the insurance proceeds. Other issues were to be addressed, if necessary, in a subsequent trial. Those potential issues, which would arise only if the trial court found the partnership agreement unenforceable, included questions relating to the distribution of remaining partnership assets, Parduhn's entitlement to a setoff, and

Parduhn's claim against one of Buchi's children for interference with contract. Because the district court ruled that the partnership agreement was enforceable and resolved the case on the basis of that agreement, those issues were never tried.

3. In this opinion, all references to section 31A–21–104 are to the 1999 edition of the Utah Code, as that is the edition we relied on in *Parduhn I*. The portions of the 1999 edition of section 31A–21–104 cited herein are substantially the same today as they were when we issued *Parduhn I*.

tion on the grounds that University Texaco's motion was untimely and that University Texaco had no interest in the proceedings. The court also held that, even if University Texaco had such an interest, it was already adequately represented by the existing parties.

¶ 8 Following our mandate in *Parduhn I*, the district court held a hearing on the equitable distribution. After declining Parduhn's invitation to take additional evidence, the district court found that the partners intended that insurance proceeds from a policy on the life of a deceased partner would go to the deceased partner's surviving heirs rather than to the partnership or the surviving partner. In so concluding, the district court relied on the defunct buy-sell agreement and on counsel's assertions that Parduhn and Buchi had treated the partnership casually by putting its funds to personal use. It also relied on the assumption that Blackett Oil had purchased both the partnership and its assets, remarking that no one had even contended that Blackett Oil owned the insurance policies. Finally, the district court noted that the partners likely would have divided the insurance policies between them had Buchi lived longer. Largely on the basis of its finding of intent, the district court again distributed the proceeds, this time in equity, to the Buchi survivors. It also ruled again that Parduhn, as University Texaco's sole surviving partner, was entitled to the remaining partnership assets.

¶ 9 Following the ruling, Parduhn correctly pointed out to the district court that it had erroneously assumed that Blackett Oil had acquired the partnership and all its assets when, in fact, Blackett Oil had acquired only the partnership's gas stations. The district court acknowledged its error, but modified neither its finding of intent nor the equitable distribution.

¶ 10 University Texaco appeals the trial court's denial of its motion to intervene. Both University Texaco and Parduhn appeal the trial court's equitable distribution of the insurance proceeds to the Buchi survivors. We have jurisdiction pursuant to Utah Code Ann. § 78–2–2(3)(j) (2002).

## ANALYSIS

¶ 11 University Texaco argues that the district court improperly dismissed its motion to intervene in the equitable distribution proceedings. It also attacks the equitable distribution itself. Parduhn questions our resolution of *Parduhn I*, contending that the Buchi survivors waived their right to raise Utah Code section 31A–21–104 as a defense and that this court therefore erred in relying on that section as a basis for remanding the case to the district court for an equitable distribution. Finally, like University Texaco, Parduhn contends that the equitable distribution itself was erroneous.

¶ 12 We hold that the district court properly denied University Texaco's motion to intervene and that University Texaco therefore lacks standing to contest the equitable distribution. We decline to address the merits of Parduhn's waiver argument because we have already twice rejected that argument. Finally, we affirm the district court's equitable distribution of the insurance proceeds.

## I. UNIVERSITY TEXACO'S MOTION TO INTERVENE

¶ 13 University Texaco moved for intervention as of right pursuant to rule 24(a) of the Utah Rules of Civil Procedure. Under rule 24(a), a court must allow a party to intervene if that party can establish that (1) its motion to intervene is timely, (2) the party "has an interest in the subject matter" of the litigation, (3) the party's "interest is or may be inadequately represented," and (4) the party "is or may be bound by a judgment in the action." *Moreno v. Bd. of Educ.*, 926 P.2d 886, 888 (Utah 1996) (internal quotations omitted); *see* Utah R. Civ. P. 24(a). Denials of intervention as of right under rule 24(a) are subject to de novo review on appeal. *In re Marriage of Gonzalez*, 2000 UT 28, ¶ 16, 1 P.3d 1074.

¶ 14 The district court denied University Texaco's motion to intervene on the ground that University Texaco did not meet three of the four requirements of rule 24(a). First, the district court held that University Texaco's motion to intervene was not timely, reasoning that University Texaco should have

sought intervention before the district court issued its August 21, 2001 memorandum decision awarding the insurance proceeds to the Buchi survivors. The court also rejected University Texaco's claim that compelling circumstances justified its delay. Second, the district court held that University Texaco had failed to demonstrate any legitimate interest in the proceedings because there was no evidence that Buchi intended University Texaco to receive the insurance proceeds. Third, the district court held that, even if University Texaco had an interest in the proceeds, the existing parties to the litigation adequately represented that interest. On appeal, University Texaco challenges these holdings, asserting that it met all the requirements of rule 24(a).

¶ 15 We agree with the district court that University Texaco's motion to intervene was untimely. Our cases have treated postjudgment motions to intervene unfavorably, articulating a "general rule" that "intervention is not to be permitted after entry of judgment." *Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1074 (Utah 1983). We will make an exception only where an applicant for intervention makes a "strong showing of entitlement and justification, or such unusual or compelling circumstances as will justify the failure to seek intervention earlier." *Id.* (footnotes omitted).

¶ 16 University Texaco argues that "unusual or compelling circumstances" exist in this case because, prior to *Parduhn I*, it could not have anticipated its potential equitable stake in the proceeds. It asserts that it became aware of its potential equitable interest only when we remanded the case to the district court for an equitable distribution in *Parduhn I*.

¶ 17 We are not persuaded. The possibility that University Texaco was entitled to an equitable interest in the proceeds under section 31A–21–104 did not first materialize when we handed down our decision in *Parduhn I*. Rather, that possibility was extant from the inception of this litigation. At any stage, University Texaco could have read the statute, realized that it provided the basis for an equitable distribution, and sought to intervene, arguing—as Parduhn does now—that

Buchi's insurance policy was partnership property. Its failure to do so renders its motion to intervene untimely.

¶ 18 Having concluded that University Texaco's motion to intervene was untimely, we can affirm the district court's ruling on intervention without addressing the other requirements of rule 24(a). Moreover, because the district court properly denied University Texaco's motion to intervene, University Texaco lacks standing to challenge the propriety of the equitable distribution itself. *Cf. State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 9 n. 1, 99 P.3d 818 ("Rather than an independent direct appeal, the proper remedy for a nonparty surety who seeks to appeal a bail bond forfeiture order is an extraordinary writ."). We therefore decline to address University Texaco's attacks on the equitable distribution and instead move to Parduhn's claims.

## II. PARDUHN'S WAIVER CLAIM

¶ 19 Parduhn first argues that our remand in *Parduhn I* was erroneous. He contends that section 31A–21–104 is an affirmative defense and therefore must be raised in a responsive pleading pursuant to rules 12(b) and 8(c) of the Utah Rules of Civil Procedure. According to Parduhn, the Buchi survivors first raised section 31A–21–104 as a defense in a motion filed after the district court's deadline for amending pleadings. Because the Buchi survivors did not raise their section 31A–21–104 argument in a timely manner, Parduhn contends, they waived it.

¶ 20 Parduhn raised this same argument in *Parduhn I*. We rejected it. Relying on section 31A–21–104, we held that Parduhn lost his insurable interest in the proceeds when the buy-sell agreement dissolved and we remanded the case to the district court for an equitable distribution. Parduhn petitioned for rehearing pursuant to rule 35 of the Utah Rules of Appellate Procedure, but we denied his petition. Parduhn now contends that, because our opinion in *Parduhn I* did not explicitly identify and reject his waiver argument, we can, and should, consider it anew.

¶ 21 We decline Parduhn's invitation to reconsider our prior resolution of this issue. When we remanded the case to the district

court pursuant to section 31A–21–104, we implicitly rejected Parduhn's waiver argument. *Parduhn I,* 2002 UT 93 at ¶¶ 16–17, 61. P.3d 982. That holding, as the Buchi survivors correctly argue, has become the law of this case, binding Parduhn in all subsequent stages of litigation. *See Thurston v. Box Elder County,* 892 P.2d 1034, 1037 & n. 2 (Utah 1995) ("The 'law of the case' is a legal doctrine under which a decision made on an issue during one stage of a case is binding in successive stages of the same litigation.").

¶ 22 Parduhn also raised the waiver argument in his petition for rehearing of *Parduhn I.* With the waiver issue squarely before us, we denied the petition for rehearing, and the waiver issue, momentarily resurrected, again died, this time for good. In short, a fair reading of our decision in *Parduhn I* and our denial of Parduhn's petition for rehearing make it abundantly clear that we found Parduhn's waiver argument unavailing. Having twice rejected it, we decline to revisit it now.[4]

### III. PARDUHN'S ATTACK ON THE EQUITABLE DISTRIBUTION

■ ¶ 23 We now review the equitable distribution itself, but we first pause to articulate the standards of review and other procedures applicable in equitable distribution cases. The parties have characterized their claims regarding the propriety of the equitable distribution as issues of either fact or law, which we review for clear error and correctness, respectively. *RHN Corp. v. Veibell,* 2004 UT 60, ¶ 35, 96 P.3d 935. An equitable distribution, however, is more than a collection of findings of fact and conclusions of law reviewable under their respective standards. When equitably distributing funds or property, a district court not only finds facts and enters legal conclusions, but also balances the relative significance of the facts and applicable law in order to achieve a fair and equitable result. This balancing requires the

exercise of discretion. We will affirm a district court's exercise of that discretion unless the district court abused it. *See Hughes v. Cafferty,* 2004 UT 22, ¶ 20, 89 P.3d 148 (reviewing a district court's equitable award of attorney fees under an abuse of discretion standard). The abuse of discretion standard recognizes both the district court's ability to balance facts and craft equitable remedies and our hesitance to act as a Monday morning quarterback in such matters.

■ ¶ 24 The standard of review applicable to findings of fact merits separate discussion. Not all findings of fact are created equal: some are ultimate findings of fact, upon which the resolution of a particular issue turns, while others are subsidiary facts supporting the ultimate findings. While we review both for clear error, *RHN Corp.,* 2004 UT 60 at ¶ 35, 96 P.3d 935, we have recognized that findings of fact "must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 28, 70 P.3d 35 (internal quotations omitted). Because a finding of fact need only be supported by sufficient subsidiary facts to justify it, one erroneous subsidiary finding does not necessarily render the ultimate factual finding erroneous as well.

■ ¶ 25 To successfully challenge an ultimate finding of fact, "an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Chen v. Stewart,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotations omitted). An appellant "must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very

---

4. Parduhn makes two additional arguments. First, he argues that we erroneously concluded in *Parduhn I* that a partner's insurable interest must exist at the time policy proceeds are distributed, rather than at the time the insurance policy is acquired. Second, he argues that we incor-

rectly concluded in *Parduhn I* that the only insurable interest a partner may have in a copartner's life is through a buy-sell agreement. Because those claims were squarely at issue in Parduhn's petition for rehearing, which we denied, we decline to revisit them here.

findings the appellant resists." *Id.* at ¶ 77 (internal quotations omitted). Moreover, an appellant may not simply review the evidence presented at trial, nor may she "reargue the factual case [she] presented in the trial court." *Id.* If an appellant argues that no evidence supports a factual finding, the burden to marshal does not then shift to the appellee; rather, the appellee may prove that the appellant did not meet her marshaling burden by presenting a "scintilla" of evidence supporting the district court's finding. *Wilson Supply, Inc. v. Fradan Mfg. Corp.,* 2002 UT 94, ¶ 22, 54 P.3d 1177. A challenge to an ultimate finding of fact is tantamount to a claim that there are insufficient subsidiary facts to support that finding. Accordingly, a challenge to a subsidiary finding is really a challenge to the ultimate finding it supports. A party challenging a subsidiary finding must therefore marshal evidence in support of the ultimate finding.

¶ 26 For convenience and clarity, we have grouped Parduhn's challenges to the equitable distribution into three categories, which we will address in turn. First, we examine Parduhn's challenge to the district court's finding of intent. Second, we address Parduhn's assertion that the district court erred when it declined to receive additional evidence before making its equitable distribution. Finally, we address the propriety of the equitable distribution as a whole.

*A. The District Court's Finding of Intent*

¶ 27 The district court's equitable distribution turned on its factual finding that Parduhn and Buchi did not intend the insurance policy on Buchi's life to be partnership property and therefore did not intend that the proceeds from the policy would go to the partnership or to Parduhn as the surviving partner. Instead, the district court found that the partners intended that the deceased partner's heirs would receive the proceeds. In making this finding, the district court relied on a number of subsidiary facts, including the following: (1) both the partnership and its assets (but not the policies) were

sold to Blackett Oil; (2) Parduhn and Buchi's business dealings, including the buy-sell agreement, evinced an intent to allow the deceased partner's heirs to receive the insurance proceeds; (3) Parduhn and Buchi put partnership assets to personal use and otherwise treated the partnership casually; and (4) had Buchi lived long enough for the partners to have conducted an accounting, "each partner would have received his policy and could choose to continue or discontinue coverage without claim from the past partner." These findings collectively supported the district court's ultimate finding of intent, upon which it based its equitable distribution.

¶ 28 Parduhn lodges six challenges to the district court's finding of intent. First, he argues that the district court erroneously concluded that Blackett Oil purchased both the partnership and its assets. Second, he argues that there was no support in the trial record for the subsidiary finding that he and Buchi treated the partnership casually. Third, he argues that, because we held the buy-sell agreement unenforceable in *Parduhn I,* the district court erred in relying on it as evidence of the partners' intent. Fourth, he argues that the district court impermissibly effected a nontestamentary transfer of the insurance proceeds to the Buchi survivors. Fifth, he argues that the district court, prior to *Parduhn I,* incorrectly found that the partners had implicitly amended their buy-sell agreement in 1989, simply by purchasing more insurance, to raise the insurance coverage to $300,000 on Buchi's life, and that the district court on remand therefore erred in using the amended agreement to determine the partners' intent.[5] Finally, Parduhn attacks as mere speculation the district court's finding that the partners "in an accounting ... would have ... divided [the insurance policies] fairly and equitably between the parties" had Buchi lived longer. Parduhn's first two challenges are appropriately characterized as challenges to findings of fact. The remaining challenges raise issues of law. We address each challenge in turn.

---

5. We need not address this argument. Our opinion in *Parduhn I* implicitly accepted the district court's conclusion that the parties had amended the buy-sell agreement by raising the level of insurance coverage. *See Parduhn I,* 2002 UT 93 at ¶ 2, 61 P.3d 982.

### 1. Findings of Fact

¶ 29 Parduhn asserts that two of the district court's subsidiary factual findings are unsupported by any evidence in the record. Specifically, he argues that the district court improperly relied on the Buchi survivors' erroneous contention that Blackett Oil purchased the partnership and all its assets. He also argues that there is no basis in the trial record for the district court's finding that he and Buchi treated the partnership casually. We treat these arguments as claims that these subsidiary factual findings are clearly erroneous. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 68, 99 P.3d 801 (noting that clearly erroneous findings are "against the clear weight of the evidence").

¶ 30 As already noted, Parduhn's attacks on the district court's subsidiary findings are really attacks on the district court's ultimate finding of intent. To successfully challenge that ultimate finding, Parduhn should have marshaled all of the remaining evidence supporting it and then demonstrated why that evidence "is legally insufficient to support [it] even when viewing it in a light most favorable to the court below." *Chen*, 2004 UT 82 at ¶ 76, 100 P.3d 1177 (internal quotations omitted). He has not done so. While he presents, in an addendum to his brief, most of the documents on which the district court relied in making its finding of intent, he does not explain why the district court erred in interpreting that evidence as it did. To appropriately marshal evidence, parties must "provide a precisely focused summary of all the evidence supporting the findings they challenge." *Id.* at ¶ 77. "This summary must correlate all particular items of evidence with the challenged findings and then convince us that the trial court erred in the assessment of that evidence to its findings." *Id.* Indeed, parties challenging factual findings must "fully embrace the adversary's position" and play "devil's advocate." *Har-*

*ding v. Bell*, 2002 UT 108, ¶ 19, 57 P.3d 1093 (internal quotations omitted).

¶ 31 Rather than meeting this high burden, Parduhn simply presents those facts that militate against the district court's finding of intent—a strategy we have previously found to be insufficient. *Chen*, 2004 UT 82 at ¶ 78, 100 P.3d 1177. It does not matter that Parduhn's claim is that no evidence supports the subsidiary findings he challenges, *see Wilson Supply, Inc.*, 2002 UT 94 at ¶ 22, 54 P.3d 1177, or that the district court ignored its promise to only consider evidence presented at trial. Even assuming the truth of those claims, the fact remains that Parduhn's challenge is ultimately to the district court's finding of intent, and he marshals none of the plenteous evidence supporting that finding.[6]

¶ 32 Our approach does not render subsidiary findings of fact unreviewable. To the contrary, were we to find so many subsidiary findings clearly erroneous that there were no longer sufficient subsidiary facts to support an ultimate factual finding, we would not hesitate to hold the ultimate factual finding clearly erroneous. However, marshaling evidence in support of the ultimate finding is a prerequisite to that analysis, and Parduhn failed to adequately comply with the marshaling requirement. We accordingly reject Parduhn's arguments regarding those two subsidiary findings of fact.

### 2. Questions of Law

¶ 33 Parduhn's remaining challenges to the district court's finding of intent are appropriately characterized as legal challenges. First, Parduhn challenges the propriety of the district court's reliance on the terms of the buy-sell agreement in reaching its conclusion with respect to intent. Specifically, he argues that, because we held that agreement unenforceable in *Parduhn I*, the district court could not subsequently rely on

---

6. That Parduhn's challenge to the subsidiary factual findings is, in reality, a challenge to the district court's finding of intent is demonstrated by the district court's treatment of Parduhn's objection to its finding that Blackett Oil purchased all of the partnership assets. After Parduhn pointed out that Blackett Oil purchased only the partnership's real property and gas sta-

tions, the district court acknowledged its error, but it made no corresponding change to its finding of intent. This is a clear indication that the district court's finding regarding the intent of the partners to be sufficiently supported by other subsidiary factual findings, a conclusion with which we agree.

it as an indication of the partners' intent. He suggests that allowing the agreement to serve as evidence of intent is tantamount to enforcing an unenforceable agreement.

¶ 34 We see no reason why a contract, valid or invalid, cannot act as an indicator of intent in an equitable distribution proceeding. Even if a written agreement is invalid for purposes of enforcement, it may still be considered as evidence of the intent behind the agreement. *See Bennett Leasing Co. v. Ellison*, 15 Utah 2d 72, 387 P.2d 246, 247 (1963) (looking to an invalid contract to determine the rental value of a car). Accordingly, regardless of a buy-sell agreement's enforceability, a district court may look to such an agreement to determine the parties' intent as to the distribution of insurance proceeds. Moreover, contrary to Parduhn's assertion, doing so is not the same as enforcing the agreement.

¶ 35 Parduhn next argues that the district court's reliance on the buy-sell agreement effected an impermissible nontestamentary transfer. He claims that, because there is no longer a buy-sell agreement, there is no longer an instrument capable of routing the insurance proceeds past Buchi's estate to the Buchi survivors. To support his argument, Parduhn cites Utah Code section 75-6-201 and interprets that provision to require that transfers bypassing a decedent's estate be effectuated by a written instrument. We disagree. Section 75-6-201 merely states that the probate code does not invalidate certain nontestamentary transfers. It does not "invalidate other arrangements by negative implication." Utah Code Ann. § 75-6-201 editorial bd. cmt. (1993). Moreover, even assuming that section 75-6-201 requires a written instrument to effectuate a nontestamentary transfer, the underlying insurance policy on Buchi's life would suffice. Parduhn assumes that our conclusion in *Parduhn I* that he lacked an insurable interest, 2002 UT 93 at ¶ 16, 61 P.3d 982, rendered the insurance policy invalid. Section 31A-21-104, however, explicitly states that "an insurance policy is *not invalid* because the policyholder lacks insurable interest"; the district court merely distributes the proceeds equitably rather than awarding them to the desig-

nee. Utah Code Ann. § 31A-21-104(5) (emphasis added). In short, section 31A-21-104(5) explicitly authorizes nontestamentary equitable distributions to persons or entities not designated as policy beneficiaries. Accordingly, we hold that the district court's equitable distribution of the insurance proceeds was based on a proper nontestamentary instrument and was distributed in accordance with Utah law.

¶ 36 We find Parduhn's claim that the district court inappropriately speculated as to what the partners would do with the proceeds in an accounting similarly unpersuasive. We hold that a judge in an equitable proceeding may draw reasonable inferences with respect to the parties' likely course of action in a given situation. *See, e.g., Miller v. Hall*, 65 Cal.App.2d 200, 150 P.2d 287, 290 (1944) (speculating regarding what the partners of a dissolved partnership would have done in an accounting).

¶ 37 Because Parduhn failed to marshal the evidence supporting the district court's finding of intent, and because we reject Parduhn's legal challenges to that finding, we affirm the district court's finding of intent. We now consider Parduhn's remaining claims.

### B. The District Court's Refusal to Take Additional Evidence of Intent

¶ 38 Parduhn argues that the district court improperly prevented him from presenting evidence at the equitable distribution hearing. According to Parduhn, the bifurcated trial that took place prior to our decision in *Parduhn I* did not encompass equitable issues. Because he did not anticipate the possibility of an equitable distribution at that time, Parduhn did not present evidence bearing on equitable considerations. Accordingly, he claims that the district court was obligated to consider the additional evidence he offered to introduce on remand.

¶ 39 We disagree. In cases of equity, we review a district court's factual findings for clear error, *RHN Corp.*, 2004 UT 60 at ¶ 35, 96 P.3d 935, and accord significant deference to the court's balancing of the facts and equities, *see Hughes*, 2004 UT 22 at ¶ 20,

89 P.3d 148. Because we defer both to the district court's findings of fact and to its balancing of those facts, we will also defer to its conclusion that it had a sufficient factual basis for reaching an equitable distribution. Our mandate in *Parduhn I* did not require that the district court hold an additional evidentiary hearing, and we conclude that the district court acted within its discretion in declining to do so.[7]

¶ 40 We are similarly unpersuaded by Parduhn's contention that he could not have anticipated the possibility of an equitable distribution at the time of the original trial in this matter. Indeed, the district court's order of August 27, 2001, noted that "[t]he parties agreed that the trial evidence factually would not be altered" by the Buchi survivors' reliance on section 31A-21-104. We accordingly reject Parduhn's claim that the district court should have received and considered additional evidence before rendering its equitable distribution.

### C. The Propriety of the Equitable Distribution as a Whole

¶ 41 Parduhn attacks the equitable distribution as a whole by questioning the district court's balancing of facts and its alleged failure to consider other facts. He asks us to balance those facts de novo and to concoct a new equitable distribution in his favor. Because we have concluded that the facts found by the district court were not clearly erroneous, we need only determine whether the district court abused its discretion in balancing the facts and equities as it did. *See Hughes*, 2004 UT 22 at ¶ 20, 89 P.3d 148. We agree with the district court's focus on the partners' intent and find the equitable distribution fair in all respects.

¶ 42 Parduhn claims, however, that Buchi's wife should not be entitled to a portion of the proceeds because she has "unclean hands." According to Parduhn, Buchi's wife breached the fiduciary duty she owes to Buchi's estate as its personal representative by failing to articulate the estate's claim to the proceeds. The doctrine of "un-clean hands" is recognized in Utah, *see Hancock v. Luke*, 52 Utah 142, 173 P. 137, 150 (1918); *Hone v. Hone*, 2004 UT App 241, ¶ 6, 95 P.3d 1221, but we have never held it to be an absolute bar to recovery. Indeed, a district court's application of the unclean hands doctrine is reviewable only for abuse of discretion. *See Hone*, 2004 UT App 241 at ¶ 9, 95 P.3d 1221 ("For this reason, we cannot say that the trial court *abused its discretion* in concluding that [the appellant] does not come with clean hands." (emphasis added)); *see also McKeever v. Fiore*, 78 Conn.App. 783, 829 A.2d 846, 852 (2003) ("The application of the doctrine of unclean hands rests within the sound discretion of the trial court."). Here, Parduhn argued before the district court on remand that Buchi's wife had unclean hands because she had failed to articulate the estate's claim on the proceeds. Nevertheless, in rendering its equitable distribution, the district court noted that the estate was included in "[t]he possible universe of recipients." It appears, then, that the district court considered Parduhn's unclean hands claim and rejected it. Given the district court's reasons for distributing the proceeds as it did, we cannot conclude that it abused its discretion in declining to invoke the unclean hands doctrine against Buchi's wife.

### CONCLUSION

¶ 43 We affirm the district court's denial of University Texaco's motion to intervene and therefore hold that it lacks standing to challenge the equitable distribution. Because we have already addressed Parduhn's waiver argument on two separate occasions, we decline to revisit it here. We hold that the district court's equitable distribution was not dependent upon any clearly erroneous facts or incorrect conclusions of law. Accordingly, the only remaining question is whether the district court abused its discretion in crafting the ultimate distribution. We conclude that it did not, and we therefore affirm the district court in all respects.

---

7. In the past, when we have mandated further evidentiary proceedings, we have done so explicitly. *See, e.g., Lancaster v. Cook*, 753 P.2d 505, 507 (Utah 1988) (per curiam).

¶ 44 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.