2002 UT App 306

Kathryn COLLARD, Trustee of the
LeRoy Collard Trust, Plaintiff
and Appellee,

v.

NAGLE CONSTRUCTION, INC., a Utah
corporation; Gary M. Nagle, an individual; and Marilyn F. Nagle, an individual, Defendants and Appellants.

Gary M. Nagle, Counterclaim Plaintiff,

v.

Kathryn Collard, Trustee of the LeRoy
Collard Trust, Counterclaim
Defendant.

No. 20000976–CA.

Court of Appeals of Utah.

Sept. 26, 2002.

Rehearing Denied Nov. 5, 2002.

Ralph J. Marsh, Backman, Clark & Marsh, Salt Lake City, for Appellants.

Kathryn Collard, Salt Lake City, Appellee Pro Se.

Before JACKSON, P.J., DAVIS, and ORME, JJ.

## OPINION

DAVIS, Judge.

¶ 1 Defendants Nagle Construction, Inc., Gary M. Nagle, and Marilyn F. Nagle [1] appeal from the trial court's decision to grant summary judgment for Plaintiff Kathryn Collard,[2] trustee of the LeRoy Collard Trust.

---

1. Nagle Construction, Inc. was the original seller in this case. It conveyed its interest in the property at issue to Gary M. Nagle on April 12, 1978. We refer to Nagle Construction, Inc., Gary M. Nagle, and Marilyn F. Nagle collectively as Seller. We use the third person pronoun "he" when referring to Seller.

2. LeRoy Collard, Kathryn Collard's father, was the original buyer in this case. However, LeRoy Collard conveyed his interest in the property to Kathryn Collard on January 3, 1997, and died on February 8, 1997. Thus, we refer to Kathryn Collard and LeRoy Collard collectively as Buyer. We use the third person pronoun "she" when referring to Buyer.

The trial court denied Seller's motion for summary judgment and granted Buyer's motion for summary judgment, ruling Buyer was entitled to title in certain real property. Buyer cross-appeals the trial court's decision to deny Buyer attorney fees pursuant to the parties' Uniform Real Estate Contract.

## BACKGROUND [3]

¶ 2 On March 30, 1978, Buyer purchased a condominium unit from Seller. Using a Uniform Real Estate Contract, Buyer agreed to pay $100,500.00 for the condominium by (1) making a down payment of $10,000.00; (2) assuming a mortgage loan owed by Seller to First Security Bank in the amount of $59,958.75; and (3) tendering 55,000 shares of stock of the Utah Coal and Chemical Company for the balance of the purchase price of $30,541.26. In return, Seller agreed to convey title to the condominium when Seller verified that the value of the stock was sufficient to cover the unpaid balance of the purchase price.

¶ 3 Buyer and Seller also addressed attorney fees in the contract:

The Buyer and Seller each agree that should they default in any of the covenants or agreements contained herein, that the defaulting party shall pay all costs and expenses, including a reasonable attorney's fee, which may arise or accrue from enforcing this agreement, or in obtaining possession of the premises covered hereby, or in pursuing any remedy provided hereunder or by the statutes of the State of Utah whether such remedy is pursued by filing a suit or otherwise.

¶ 4 Buyer paid the $10,000.00 down payment and began making payments on the mortgage. She also took possession of the condominium, began paying property taxes, and began making improvements to the property. In May 1979, Buyer recorded notice of the contract and tendered the re-

quired 55,000 shares of stock to Seller. However, Buyer never assumed the mortgage.

¶ 5 Seller informed Buyer that he considered Buyer's failure to assume the mortgage a breach of contract and advised Buyer that default and foreclosure proceedings could be instituted. In lieu of foreclosure proceedings, Buyer and Seller added a second addendum [4] to the contract on September 18, 1979. In Addendum 2, Buyer agreed to pay approximately $50,000.00 more for the condominium in exchange for Seller's forbearance. Addendum 2 reads:

Title of premises being sold under the contract referred to above will be transferred when [Seller] sells sufficient of the shares of Utah Coal and Chemical Corp. transferred under [the contract] to realize $85,000 cash. Seller hereby agrees to sell shares sufficient to realize $85,000 within 1 year of receipt thereof providing the market value of said shares will cause a realization of $85,000.

Should the value of the 55,000 shares conveyed not equal $85,000 within 1 year buyer agrees to convey additional shares of Utah Coal and Chemical Corp. stock or cash sufficient to bring the total value conveyed to seller to $85,000 before seller conveys title to premises sold to buyer.

¶ 6 On January 13, 1981, Seller, through his attorney, sent Buyer a letter informing Buyer that the stocks did not reach the contracted value of $85,000.00 within one year and that Buyer had not yet paid the difference. Accordingly, Seller informed Buyer that he would consider Buyer in default if Buyer did not pay the amount still owed on the contract by January 25, 1981.

¶ 7 Buyer responded to the letter on January 25, 1981, by asserting that she was not in default and by enclosing information that allegedly demonstrated the stocks could have been sold for $85,000.00 during the one-year

---

3. It is well established that "in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). We recite the facts of this case accordingly.

4. The parties drafted Addendum 1 as part of the original contract. Therefore, we make no separate reference to Addendum 1.

period referred to in Addendum 2. After Buyer's response, no further action concerning the contract was taken by either party until 1999. During this time, Buyer continued to inhabit the condominium and make mortgage, tax, and improvement payments. In 1986, Buyer sought to refinance the mortgage on the condominium, and received a response letter informing her that title to the condominium was in Seller's name. Later, in 1989, Buyer wrote a letter specifically requesting that Seller's name be replaced with Buyer's name on the title.

¶ 8 On July 28, 1999, Buyer brought suit, seeking a declaratory judgment to quiet title based on breach of contract and adverse possession. Seller answered and counterclaimed for remedies under the contract, including forfeiture and foreclosure. Seller also sought a declaratory judgment quieting title in him. Both parties filed motions for summary judgment. After a July 17, 2000 hearing, the trial court ruled that the statute of limitations barred both parties' claims, and ordered a hearing to determine whether the court had equitable powers to resolve the dispute.

¶ 9 During that hearing, on August 30, 2000, the trial court ruled that only Seller was barred by the statute of limitations. The trial court determined that the statute of limitations ran against Seller when he failed to bring suit against Buyer within six years after Buyer allegedly failed to pay the $85,000.00 required by Addendum 2. However, the statute of limitations had not run against Buyer because her continuous mortgage payments had kept and would continue to keep the remainder of the contract alive. Accordingly, the trial court ruled that Buyer's legal right to title would accrue when she finished paying the mortgage.

¶ 10 In its December 4, 2000 written order, the trial court listed the undisputed facts of the case. Among these facts, the trial court specifically stated: "The court makes no finding regarding the value of the 55,000 shares of Stock received by [Seller] at any point in time"; "[N]o additional agreements or changes to the contract were entered into between [Seller and Buyer] after January 25, 1981"; and Seller "retained the 55,000 shares of Stock and the $10,000.00 down payment made by [Buyer]."

¶ 11 Based on the undisputed facts, the trial court concluded that the contract was governed by the six-year statute of limitations as set forth in Utah Code Ann. § 78-12-23 (1996); that Seller's cause of action for breach of contract based on Buyer's failure to assume the mortgage arose no later than January 25, 1981; that Seller's counterclaim based on Addendum 2 and the value of the 55,000 shares of stock was barred no later than January 25, 1987; and that Seller's continued acquiescence in Buyer's payments on the mortgage balance operated as a waiver of the assumption requirement. The court also concluded that "[e]ach and every cause of action set forth in [Seller's] Answer and Counterclaim was and is barred by the six year Statute of Limitations set forth in [section] 78-12-23."

¶ 12 The court went on to find that: "Except for the terms or requirements of the contract, the enforcement of which is now barred by the statute of limitations . . . the Contract remains a valid and binding agreement between the parties"; "The [Buyer's] right to demand delivery of fee title pursuant to the Contract has not arisen and will not arise or accrue until payment of the remaining balance owing on the [mortgage]"; and finally, "Pursuant to the terms of the Contract, [Buyer] is entitled to immediate delivery of fee title subject to and conditioned upon payment of the remaining balance owed on the [mortgage]."

¶ 13 The court then fashioned an order that denied Seller's motion for summary judgment, denied Buyer's cross-motion for summary judgment on her breach of contract and adverse possession claims, awarded summary judgment for Buyer on Seller's counterclaims, and granted Buyer's cross-motion for summary judgment for "Declaratory Relief Quiet Title." The court ordered delivery of the deed to an escrow agent of Buyer's choosing, ordered Buyer to pay off the mortgage, and ordered the deed released to Buyer once the mortgage was paid. On November 6, 2000, the Court rejected Buyer's request for attorney fees and costs.

¶ 14 On December 4, 2000, the trial court entered an order staying judgment on appeal conditioned upon Seller's posting bond. Seller failed to post bond, and the Court vacated the ordered stay. Title to the condominium passed to Buyer when she finished making the mortgage payments. Thereafter, the condominium was sold to a third party.

## ISSUES AND STANDARDS OF REVIEW [5]

¶ 15 The first issue on appeal is whether the trial court correctly granted Buyer's motion for summary judgment, ruling that Buyer was entitled to title of the property. "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Jones v. ERA Brokers Consol.*, 2000 UT 61,¶ 8, 6 P.3d 1129; *see also* Utah R. Civ. P. 56(c). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994). "We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Berenda v. Langford*, 914 P.2d 45, 50 (Utah 1996) (citations and quotations omitted).

¶ 16 The second issue on appeal is whether the trial court erred in denying Buyer attorney fees. "Whether a party may recover attorney fees in an action is a question of law that we review for correctness." *Ault v. Holden*, 2002 UT 33,¶ 46, 44 P.3d 781.

## ANALYSIS

### I. Summary Judgment and Specific Performance

¶ 17 Seller argues that the trial court erred in granting Buyer's motion for summary judgment because Buyer was not enti-

tled to receive title to the condominium without first paying the full purchase price.

¶ 18 Although the trial court characterized its decision as an order to quiet title, the trial court's decision is actually a decree for specific performance. A quiet title action is a "proceeding to establish a plaintiff's title to land." Black's Law Dictionary 30 (7th ed.1999); *see also* Utah Code Ann. § 78–40–1 (1996). "To succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048–49 (Utah 1983). Conversely, an action for specific performance is an action seeking "precise fulfillment of a legal or contractual obligation." Black's Law Dictionary 1407 (7th ed.1999); *see also Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1243 (Utah 1992). In this case, Seller, not Buyer, held title to the condominium and the trial court determined that Buyer was not in adverse possession. Consequently, Buyer's only claim to title of the condominium was through specific performance of the contract. Unless the trial court ordered Seller to perform, Buyer had no claim to legal title of the condominium. *See Olwell v. Clark*, 658 P.2d 585, 586–87 (Utah 1982) (recognizing that under the adverse possession statute "possession of real property is *presumed* to be in the legal title holder and that occupancy by any other is deemed subordinate to that title" (emphasis in original)). Therefore, the trial court's order in Buyer's favor is an order granting specific performance.

¶ 19 Specific performance is an equitable remedy. *See Fischer v. Johnson*, 525 P.2d 45, 46 (Utah 1974). "To obtain a decree for specific performance against a defaulting party, the aggrieved party must make an *unconditional tender of the performance required by the agreement*." *Kelley*, 846 P.2d

---

**5.** Seller also argues that Buyer did not meet the requirements of rule 9(h) of the Utah Rules of Civil Procedure when she pleaded the affirmative defense of statute of limitations because she did not "refer[ ] to or describ[e] such statute specifically and definitely by section number." We decline to reach this argument as it is raised for the first time on appeal. *See, e.g., Monson v. Carver*, 928 P.2d 1017, 1022 (Utah 1996) (holding " 'issues not raised at trial cannot be argued for the first time on appeal' ... unless the petitioner demonstrates that 'plain error' occurred or 'exceptional circumstances' exist") (quoting *State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994)).

at 1243 (emphasis added). "Neither party to an agreement 'can be said to be in default (and thus susceptible to a judgment for damages or a decree for specific performance) until the other party has tendered his own performance.' " *Id.* (quoting *Century 21 All W. Real Estate & Inv., Inc. v. Webb*, 645 P.2d 52, 56 (Utah 1982)). Thus, to be entitled to the equitable remedy of specific performance on the contract, Buyer must have fully tendered, or stood ready to fully tender, her own performance under the contract.

¶ 20 Under the terms of the contract, Buyer was required to perform the requirements outlined in the contract before receiving title to the condominium. Buyer made the $10,000.00 down payment in 1978 and tendered the 55,000 shares of stock in 1979. However, Buyer failed to assume the mortgage. In response to Buyer's breach, Seller and Buyer added Addendum 2 to the contract. Under Addendum 2, Buyer was obligated to pay an additional $50,000.00, bringing the total to $85,000.00. This $85,000.00 was to be realized from the 55,000 shares of stock she had already tendered to Seller. In Addendum 2, Seller agreed to sell the stock within one year if it reached a value of at least $85,000.00 within that year. Otherwise, Buyer was obligated to "convey additional shares of Utah Coal and Chemical Corp. stock or cash sufficient to bring the total value conveyed to seller to $85,000 before seller conveys title to premises sold to buyer." [6]

¶ 21 Summary judgment is inappropriate because whether Buyer ever performed the requirements of Addendum 2 is a disputed issue of fact. Although Buyer conveyed the 55,000 shares of stock, there is evidence in the record presented by Seller to show that the shares never reached a value of at least $85,000.00. In contrast, Buyer submitted evidence that the shares did obtain a value of at least $85,000.00 within the one-year period specified in Addendum 2. The trial court seemed to recognize this conflict, but expressly noted that it made no finding [7] as to the value of the 55,000 shares of stock at any time. If the stock did reach a value of at least $85,000.00 within one year and Buyer assumed the mortgage, then Buyer fully performed and is entitled to specific performance. However, if the stock did not reach a value of $85,000.00 within one year and Buyer never tendered stock or cash sufficient to bring the total value conveyed to $85,000.00, then Buyer never fully performed and is not entitled to specific performance.

¶ 22 Buyer argues that the statute of limitations prevents Seller from asserting Buyer's failure to assume the mortgage and failure to pay the amount due under Addendum 2 as counterclaims. In this case, the trial court held Seller's claims for breach of contract accrued no later than January 25, 1981. Nevertheless, even if Seller's counterclaims are barred by the statute of limitations, Seller is permitted to use these counterclaims as an offset or recoupment against Buyer's claims.

¶ 23 Offset is permitted when "cross demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up." Utah R. Civ. P. 13(i). When offset is utilized, "the two demands shall be deemed compensated

---

6. We note that the trial court incorrectly interpreted the language of Addendum 2. " 'In interpreting a contract, the intentions of the parties are controlling.' " *Spears v. Warr*, 2002 UT 24, ¶ 39, 44 P.3d 742 (quoting *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599). "When presented with a written instrument, we look first to the four corners of the agreement to determine the parties' intentions. If the language within the four corners is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language." *Id.* (internal citation omitted). The language of Addendum 2 is unambiguous. Buyer was obligated to transfer $85,000.00 in value before Seller conveyed title. However, the parties and the trial court misinterpreted the language of Addendum 2 to mean Buyer was required to pay the total $85,000.00 within one year. The one-year time limitation to which the trial court refers relates not to Buyer's obligation to pay, but to Seller's obligation to sell the stock if the stock reached a value of at least $85,000.00 within one year.

7. Since findings in a summary judgment context are inappropriate anyway, the court presumably determined it was unnecessary to reach this issue given its conclusion that Seller's claims were barred by the statute of limitations.

so far as they equal each other." *Id.* Under this doctrine, a defendant may even "utilize a counterclaim, normally barred by the statute of limitations, to offset a plaintiff's claim." *Coulon v. Coulon,* 915 P.2d 1069, 1072 (Utah Ct.App.1996). Recoupment is similar to offset and is utilized where parties' claims arise from the same transaction. *See Mark VII Fin. Consultants Corp. v. Smedley,* 792 P.2d 130, 132–33 (Utah Ct.App.1990) (holding that although offset "refers to an unrelated transaction" and recoupment refers to "the same transaction," "the distinctions between recoupment, [offset], and counterclaim have ... been dissolved in Utah").

¶ 24 In this case, either offset or recoupment is permitted. First, offset is permitted because Buyer's and Seller's causes of action coexisted. "An action may be brought by any person against another who claims an estate or interest in real property or an interest or claim to personal property adverse to him, for the purpose of determining such adverse claim." Utah Code Ann. § 78–40–1. Buyer brought her action against Seller in 1999. Buyer argues that she had to wait to bring suit until after she paid the remaining amount owed on the mortgage. However, this contention is contradicted by Buyer's own course of conduct. This action was brought before Buyer finished paying the balance of the mortgage. Thus, because Seller's and Buyer's claims coexisted, Seller is entitled to use his counterclaims to offset Buyer's claims. Second, recoupment is permitted because Seller's and Buyer's claims arose from the same contract.

¶ 25 Buyer argues that offset is not available to Seller because Seller did not plead offset as an affirmative defense as required by rule 12(h) of the Utah Rules of Civil Procedure. However, neither offset nor recoupment are affirmative defenses that must be pleaded or waived. Instead, offset and recoupment are merely mechanisms that may be used to ensure substantial justice if a party asserts a counterclaim that is barred by the statute of limitations. *See, e.g., Jacobsen v. Bunker,* 699 P.2d 1208, 1210 (Utah 1985) (holding that where a defendant has "a counterclaim that otherwise would have been barred by a statute of limitations, the counterclaim could be [offset] against the plaintiff's claim").

¶ 26 Allowing an offset or recoupment in circumstances where a defendant's affirmative claims are barred by the statute of limitations is based on a sound policy of preventing a plaintiff from waiting to assert a claim until after a defendant's counterclaim is barred. *See Coulon,* 915 P.2d at 1072. Allowing an offset in this case is appropriate even though Buyer essentially seeks specific performance rather than money damages because equity requires it. To the extent that Seller sat on his rights and delayed asserting those rights, Buyer did the same. Moreover, although Seller may have ultimately waived his claim, it is Buyer who initially breached the parties' original contract by never assuming the mortgage. To allow Buyer to breach one of her obligations under the contract, then, years later—after never having brought suit to have title conveyed—to obtain title without having to perform her other obligations under the same contract, is not equitable. Because Buyer has already sold the property at issue, all that remains for a remedy for Seller is a monetary award. Thus, the concept of offset is easily applied to the facts of this case, and the trial court can fashion a remedy after any factual issues are resolved.

¶ 27 If, on remand, the fact finder determines that the 55,000 shares were worth at least $85,000.00 at some point in time between September 18, 1979 [8] and September 18, 1980, and that Seller was obligated to sell the shares at that time, then Buyer has performed her obligations and Seller is not entitled to further relief. However, if the fact finder determines that the shares did not reach a value of $85,000.00 within the appointed period, then Seller is entitled to offset the amount of the shortfall Buyer was obligated to pay in cash or additional shares against the value of the property.

¶ 28 We reject Buyer's other arguments for affirming the trial court's order. First, Buyer argues the trial court's decision granting specific performance was correct

---

8. The date of execution of Addendum 2.

because Seller waived his right to sue for breach of contract. Regardless of any implied waiver by Seller as to Buyer's duty to assume the mortgage, the above analysis, based on equity and the propriety of an offset for Seller, controls. Second, Buyer argues that the trial court's decision was appropriate because the doctrine of laches prevents Seller from asserting his rights under the contract. Laches bars a recovery when there has been a delay by one party causing a disadvantage to the other party. *See Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1260 (Utah 1975). Whether laches bars recovery in this case turns on disputed issues of fact, making it inappropriate for summary judgment.

## II. Attorney Fees

¶ 29 The language of the contract respecting attorney fees is unambiguous. The parties intended that the defaulting party should be responsible for costs and attorney fees. Accordingly, on remand the trial court should determine and award costs and attorney fees as may now be appropriate.

## CONCLUSION

¶ 30 We conclude that the trial court erred in granting summary judgment for Buyer and ordering title be conveyed to Buyer upon payment of the mortgage. We also conclude that the only basis for awarding attorney fees is the contract, and leave to the trial court on remand to determine whether and to whom attorney fees and costs should be awarded.

¶ 31 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and GREGORY K. ORME, Judge.