2007 UT App 168

**Geralynn MYRAH, Plaintiff, Appellant, and Cross-appellee,**

v.

**Klaus CAMPBELL and Shannon Campbell, Defendants, Appellees, and Cross-appellants.**

**No. 20050660–CA.**

Court of Appeals of Utah.

May 17, 2007.

Thor B. Roundy, Salt Lake City, for Appellant.

Kevin Sheff and Ryan M. Lambert, Cottonwood Heights, for Appellees.

Before GREENWOOD, Associate P.J., DAVIS and ORME, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 In this landlord-tenant dispute, Plaintiff Geralynn Myrah (Landlord) appeals the trial court's judgment awarding her damages against Defendants Klaus and Shannon Campbell (Tenants) in an amount significantly less than what Landlord sought. Tenants cross-appeal the trial court's dismissal of their counterclaims. We affirm all of the substantive issues appealed, but remand the issue of attorney fees to the trial court.

## BACKGROUND

¶ 2 In June 1998, Tenants and Landlord entered into their first one-year lease agreement (Rental Agreement) for a five-bedroom house in Sandy, Utah, where Tenants lived with their three children. Almost a year later, in May 1999, the parties signed a one-year renewal agreement (Renewal Agreement). The Renewal Agreement required rent of $1095 a month, and stated that Tenants had examined the premises and that they were in good order and repair. Both agreements contained a section with blank lines in which to identify any modifications. The word "None" was written in this section on both agreements. Both agreements also required Tenants to maintain the premises in a "clean and satisfactory condition." In addition, the agreements included an integration clause, stating: "The above terms and conditions constitute the only terms and conditions of this agreement and may be modified only in writing, which is signed by both parties."

¶ 3 Despite the contract provisions stating that the premises were in good repair, Tenants alleged in their affirmative defenses and counterclaims that the house was in disrepair. Specifically, they claimed it was infested with cockroaches and spiders, a toilet leaked into the downstairs basement, windows and a back door were broken, power outlets lacked cover plates, and a bathroom light hung by its wires. The Salt Lake City–County Health Department (the Department) inspected the property in September 1998, and again in May 2000. After both visits, the Department sent a letter to Landlord stating that Landlord was in violation of health department regulations. The second letter cited "poor upkeep on the entire dwelling and premises; problems that are normally taken care of by the owner." The problems the Department identified included a leaky swamp cooler, an inoperable dishwasher, screenless windows, and a storm door that remained fifteen inches open at all times. In contrast, Landlord alleged in her complaint and at trial that Tenants maintained the premises in an unclean condition, damaged the interior of the house, broke sprinkler heads, stopped watering the lawn, removed screens from the windows, and damaged the linoleum in the kitchen.

¶ 4 Tenants moved out one month prior to the expiration of the Renewal Agreement. They did not pay the last month's rent and requested that their security deposit of $1100 be applied to the last month's rent.

¶ 5 Landlord sued Tenants for breaching the Renewal Agreement by damaging the property and failing to pay timely rent.[1] Tenants filed an answer, denying liability and asserting as an affirmative defense, among others, that Landlord had failed to maintain the premises, resulting in a constructive eviction. Tenants also counterclaimed, asserting that Landlord breached the implied and express contract to maintain the premises in accordance with local health regulations and that Landlord breached the warranties of fitness for a particular purpose and habitability. Tenants' counterclaim also alleged negligence and severe emotional distress.

---

1. For the most part, we refer only to the Renewal Agreement, which supplanted the earlier Rental Agreement.

¶ 6 Landlord filed a motion for partial summary judgment on Tenants' counterclaims. After granting that motion, the trial court certified three questions for trial. The two relevant on appeal are: (1) whether the premises were habitable, and (2) "whether an integration clause was contained in the original lease and the renewal agreement." The second question pertained to the admission of parol evidence.

¶ 7 After a two-day bench trial, the trial court entered findings of fact and conclusions of law stating that the property was not uninhabitable during Tenants' twenty-three month occupancy, but that the condition of the premises "was one of inconvenience and discomfort." The trial court further determined that the Renewal Agreement was unambiguous and that the integration clause prohibited Tenants from introducing parol evidence to alter the plain meaning of the agreement.

¶ 8 In her complaint, Landlord sought damages totaling $5712.47 from Tenants, plus costs and attorney fees. The trial court awarded damages against Tenants of $305.87, consisting of the following: $50 unpaid rent for April 2000; $35 late fees; $122.37 unpaid utilities; $98.50 prejudgment interest; and $1100 damages and cleaning costs, which the trial court offset by the forfeited security deposit of $1100. The trial court also required Tenants to pay $270.50 for an airplane ticket for Landlord to attend her second deposition. Based on the inconvenient and uncomfortable condition of the premises, the trial court awarded an equitable offset equal to the amount of the last month's rent, effectively relieving Tenants of their responsibility to pay the last month's rent. The trial court also determined that neither party had prevailed and, as a result, awarded no attorney fees or costs. Landlord appeals and Tenants cross-appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 In their cross-appeal, Tenants assert that the trial court erred in granting summary judgment on their counterclaims. "We review a trial court's summary judgment ruling for correctness and afford no deference to its legal conclusions." *Utah Coal & Lum-* *ber Rest., Inc. v. Outdoor Endeavors Unlimited,* 2001 UT 100, ¶ 9, 40 P.3d 581.

¶ 10 Landlord claims that parol evidence contradicting the express provisions of the Renewal Agreement was improperly admitted at trial. " 'Trial courts are afforded broad discretion in determining the admissibility of evidence; thus, we will not disturb a trial court's ruling whether to admit or exclude evidence absent an abuse of discretion.' " *Lee v. Langley,* 2005 UT App 339, ¶ 9, 121 P.3d 33 (quoting *Vigil v. Division of Child & Family Servs.,* 2005 UT App 43, ¶ 8, 107 P.3d 716), aff'd sub nom. *Lee v. Thorpe,* 2006 UT 66, 147 P.3d 443.

¶ 11 Landlord also argues that the trial court did not have the authority to grant equitable relief to Tenants offsetting the last month's rent. "When a district court fashions an equitable remedy, we review it to determine whether the district court abused its discretion." *Collard v. Nagle Constr., Inc.,* 2006 UT 72, ¶ 13, 149 P.3d 348.

¶ 12 Landlord further claims that there was insufficient evidence to support the trial court's award of $1100 for cleaning and damage costs, instead of the larger amount sought by Landlord. "[A] trial court's findings of fact will not be reversed unless they are clearly erroneous...." *Clark v. Clark,* 2001 UT 44, ¶ 14, 27 P.3d 538.

¶ 13 Finally, Landlord appeals the trial court's refusal to award her costs and attorney fees. The award of attorney fees is a matter of law, reviewed for correctness, but a trial court has " 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard.' " *Jensen v. Sawyers,* 2005 UT 81, ¶ 127, 130 P.3d 325 (quoting *Dixie State Bank v. Bracken,* 764 P.2d 985, 991 (Utah 1988)).

## ANALYSIS

### I. Summary Judgment

¶ 14 Tenants claim that the trial court improperly granted partial summary judgment to Landlord, dismissing Tenants' counterclaims. Tenants assert that Landlord had

actual knowledge that the premises were in violation of the health and safety code, making it unnecessary for Tenants to comply with the written notice requirements of the Utah Fit Premises Act (the Act). *See* Utah Code Ann. §§ 57–22–1 to –6 (1990).[2]

¶ 15 Even though Tenants' counterclaims did not refer to or assert claims under the Act, Landlord referenced the Act in a hearing on the parties' cross-motions for summary judgment. The trial court then ordered Landlord to file a separate motion for summary judgment based upon the Act. Tenants opposed the motion, stating: "[Tenants do] not claim any right to relief under the Utah Fit Premises Act." Rather, Tenants asserted that their only claims arose under the common law warranty of habitability. Nevertheless, the trial court granted the motion for summary judgment, dismissing Tenants' counterclaims on the basis that Tenants had failed to comply with the requirements of the Act.

¶ 16 The Act "provides specific remedies to residential tenants whose rental units become uninhabitable due to violations of health and safety standards." *Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996) (citing Utah Code Ann. §§ 57–22–1 to –6). To establish a violation under the Act, the tenants must provide "written notice of the noncompliance to the owner" and time for the owner to terminate the rental agreement or fix the problems. Utah Code Ann. § 57–22–4. If the condition described in the notice is not corrected within a reasonable time, the renter must serve the owner with a "notice to repair or correct condition." *Id.* at § 57–22–6(2). Only then, if the problems persist, may the renter bring an action in district court. *See id.* at § 57–22–6(3)(a).

¶ 17 It is undisputed that Tenants did not follow these statutory procedures when they sent informal emails to Landlord and telephoned Landlord and Landlord's son regarding the perceived problems. In granting Landlord's motion for partial summary judgment, the trial court found that Tenants did not comply with the Act's requirements.

Nonetheless, Tenants argue, for the first time on appeal, that because Landlord had "actual notice" of health code violations, "[Tenants] substantially complied with their obligation under the Utah Fit Premises Act."

¶ 18 Tenants are barred from pursuing this claim on appeal because it was not raised in the trial court. *See State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759. "In order to preserve an issue for appeal, it must be ... sufficiently raised to a level of consciousness before the trial court, and must be supported by evidence or relevant legal authority." *Id.* (quotations and citation omitted). During the summary judgment proceedings, Tenants not only failed to argue the issue, but they specifically stated, "[Tenants do] not claim any right to relief under the Utah Fit Premises Act." Accordingly, we affirm the dismissal of Tenants' counterclaims.

## II. Parol Evidence

¶ 19 Landlord argues that the trial court improperly allowed the introduction of parol evidence regarding the property's condition, contradicting the express terms of the Renewal Agreement. "The standard parol evidence rule is that extraneous evidence may not be used to contradict or vary the terms of a written instrument." *FMA Fin. Corp. v. Hansen Dairy, Inc.*, 617 P.2d 327, 329 (Utah 1980). The Renewal Agreement stated that the property was in a state of good repair and clean condition and that Tenants had examined the premises. It also included an integration clause providing that the Renewal Agreement included all terms and conditions and could be modified only by a signed, written document. Notwithstanding these provisions, Tenants introduced evidence at trial about the rundown state of the property, both before and during the time of their occupancy. The trial court admitted the evidence over Landlord's objection, but allowed Landlord to make a motion to strike the evidence at the end of trial if there was not a finding of unhabitability. Landlord made such a motion, and the trial court

---

2. In their brief on appeal, Tenants discuss their claims only under the Utah Fit Premises Act, *see* Utah Code Ann. §§ 57–22–1 to –6 (1990), in connection with dismissal of their counterclaims. Because they do not brief any other theories, we consider only their statutory argument.

denied it. Landlord argues that this evidence was not only inadmissible, but may have created a bias in the trial court that influenced its ruling.

¶ 20 Despite the trial court's dismissal of Tenants' counterclaims, one of the issues certified for trial was whether the premises were habitable. Landlord does not assert that the trial court improperly certified this question. Landlord does claim, however, that the only time periods relevant to this case were two separate months in 2000, when rent was not paid in full. As a result, Landlord asserts that all evidence related to other time periods or other tenants should have been excluded as parol evidence. Landlord also argues that evidence of the property's condition should have been excluded by the parol evidence rule because of the integration clause and the Renewal Agreement's provisions that the premises were in good order and repair and had been examined by the Tenants. The trial court apparently allowed the introduction of evidence about the condition of the property because Tenants asserted that Landlord breached the implied warranty of habitability as an affirmative defense to Landlord's breach of contract claims. At the end of trial, the trial court stated that all the submitted evidence related directly to the issue of habitability.

¶ 21 Because all Tenants' counterclaims concerning habitability under the Act were dismissed by partial summary judgment, we assume that the trial court analyzed the habitability issue at trial under the common law implied warranty of habitability.[3] The Utah Supreme Court first recognized the common law implied warranty of habitability in *Wade v. Jobe*, 818 P.2d 1006 (Utah 1991). There, the court held that "the warranty of habitability does not require the landlord to maintain the premises in perfect condition at all times, nor does it preclude minor housing code violations or other defects. Moreover, the landlord will not be liable for defects

caused by the tenant." *Id.* at 1010. In *P.H. Investment v. Oliver*, 818 P.2d 1018 (Utah 1991), the supreme court further held that "any waiver of the warranty of habitability must be *express* .... [W]e hold that the express waiver will be effective only as to any specific defects listed as waived." *Id.* at 1022. In addition, "[s]ubstantial compliance with building and housing code standards will generally serve as evidence of the fulfillment of a landlord's duty to provide habitable premises." *Wade*, 818 P.2d at 1011.

¶ 22 Tenants introduced evidence relating to the premises' condition which included proof of purchases made by Landlord to show what she bought to fix the property, testimony from neighbors and a former tenant about the property's condition, evidence of the Department's inspections and correspondence, as well as Tenants' own testimony. The trial court refused to grant Landlord's motion to strike, stating, "[T]he issue of habitability always remains, and that's why I'll allow ... all of this testimony about the ... condition of the home." Ultimately, the trial court concluded that the home was "uncomfortable" and "inconvenient" but was "certainly habitable."

¶ 23 The evidence introduced helped the trial court determine whether Landlord substantially complied with building and housing codes and whether Tenants expressly waived any known defects, both of which are relevant to the issue of habitability. Landlord cites to no authority for the proposition that the introduction of evidence on an issue properly tried by the court must be stricken if the party does not prevail on that issue. Consequently, the trial court did not abuse its discretion in allowing this evidence. Furthermore, we do not believe the trial court was unduly biased by the evidence or improperly considered it in fashioning an equitable remedy, as explained in the next section of this opinion.[4]

---

**3.** Neither side sought a ruling on whether the Act preempted or codified the common law warranty of habitability. Although the trial court concluded that "the Utah Fit Premises Act accomplishes something akin to codifying the warranty of habitability," that issue was not raised by the parties

in this appeal, and accordingly, we do not address it.

**4.** The trial court ultimately concluded that parol evidence was inadmissible to alter the Renewal Agreement's plain meaning. Thus, the trial court granted some relief to Landlord as provid-

## III. Equitable Offset

■ ¶ 24 Landlord argues that the trial court did not have the legal authority to grant equitable relief to Tenants based upon the discomfort and inconvenience they suffered during the twenty-three months they lived on the premises. Consequently, Landlord asserts that the trial court improperly exercised its equitable powers to offset the last month's rent and late fees.

■■ ¶ 25 "Utah courts 'have broad authority to grant equitable relief as needed.'" *Utah Coal & Lumber Rest. Inc. v. Outdoor Endeavors Unlimited,* 2001 UT 100, ¶ 12, 40 P.3d 581 (quoting *Jeffs v. Stubbs,* 970 P.2d 1234, 1243 (Utah 1998)). "Courts should invoke this authority whenever 'appropriate and necessary to enforce rights or to prevent oppression and injustice.'" *Id.* (quoting *Williamson v. Wanlass,* 545 P.2d 1145, 1148 (Utah 1976)). As earlier noted, we review use of equitable remedies under an abuse of discretion standard. *See Collard v. Nagle Constr., Inc.,* 2006 UT 72, ¶ 13, 149 P.3d 348. "This standard recognizes 'the district court's [unique] ability to balance facts and craft equitable remedies and our [corresponding] hesitance to act as a Monday morning quarterback in such matters.'" *Id.* (alterations in original) (quoting *Parduhn v. Bennett,* 2005 UT 22, ¶ 23, 112 P.3d 495).

¶ 26 At the end of trial, the trial court concluded that the conditions in the house were unbearable, inconvenient, and uncomfortable, but nonetheless habitable.[5] Because the reasons for equitably offsetting payment of the last month's rent are supported by the evidence, we conclude the trial court did not exceed its broad authority in granting equitable relief.

## IV. Cleaning and Repair Costs

■ ¶ 27 Landlord claims that when only admissible evidence is considered, the evidence was insufficient to establish that the cleaning and repair costs were only $1100. Landlord argues that the lower award

amount was based upon inadmissible parol evidence regarding the condition of the premises both before and during Tenants' occupancy. The trial court, however, awarded $322.14 for repair and cleaning expenses and $500 for labor expenses that were "reasonable and necessary as a result of the occupancy of the premises by [Tenants]." The trial court found the balance of the $1100 was for "the normal wear and tear." Landlord has not demonstrated that this finding is contrary to the evidence presented and, thus, clearly erroneous. Similarly, Landlord has not adequately challenged the trial court's findings denying damages for payments by Landlord to another individual because Landlord did not provide a sufficient foundation for this payment. Accordingly, we conclude there was no error in the trial court's award of damages for repair and cleaning.

## V. Attorney Fees

■ ¶ 28 This litigation was lengthy and vigorously pursued, and included protracted pre-trial proceedings. The trial court concluded at the end of trial, "[B]ecause neither side has prevailed in this matter to the Court's satisfaction as to a prevailing party, neither side [is] entitled to attorney's fees. Each bear their own attorney's fees."

¶ 29 On appeal, Landlord claims she is entitled to her costs and attorney fees pursuant to the Renewal Agreement, which states:

> If [Landlord] should be compelled to file or sustain legal action to collect rent due or part thereof, or for damages, cleaning, repairs, utilities or to dispossess the agreement [sic] or to recover possession of premises, [Tenants] shall pay all costs in connection therewith, including travel and legal fees.

Landlord further claims that she is entitled to attorney fees because she was the prevailing party based upon the trial court's net judgment award in the principal amount of

---

ed in the Renewal Agreement, rejecting Tenants' affirmative defenses.

5. As noted in *Wade v. Jobe,* 818 P.2d 1006 (Utah 1991), violations of the code are not in and of

themselves sufficient to render premises uninhabitable under the implied warranty of habitability. *See id.* at 1010.

$207 and because Tenants' counterclaims were dismissed on summary judgment.

¶ 30 In contrast, Tenants argue they should have been awarded their attorney fees and costs, despite the language in the contract, because they prevailed on some pretrial motions, they defeated some of Landlord's claims, and Landlord's misconduct required the trial court's intervention.[6]

¶ 31 The award of attorney fees is a matter of law, reviewed for correctness, but a trial court has " 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard.' " *Jensen v. Sawyers*, 2005 UT 81, ¶ 127, 130 P.3d 325 (Utah 2005) (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988)).

¶ 32 We first note that although the Renewal Agreement provides that only Landlord can recover attorney fees, Utah Code section 78–27–56.5 establishes reciprocal rights to recover attorney fees based on a written contract. *See* Utah Code Ann. § 78–27–56.5 (2002). While the contract language at issue here does not refer to a prevailing party,[7] the trial court's determination that there was no prevailing party is instructive in our analysis. *See, e.g., Mountain States Broad. Co. v. Neale*, 776 P.2d 643, 648 (Utah Ct.App.1989). "Typically, determining the 'prevailing party' for purposes of awarding fees and costs is quite simple. Plaintiff sues defendant for money damages; if plaintiff is awarded a judgment, plaintiff has prevailed, and if defendant successfully defends and avoids an adverse judgment, defendant has prevailed." *Id.* However, this court held that when both parties are awarded a judgment for claims arising out of the same transaction, the prevailing party, and the one entitled to an award of its fees, is "the party in whose favor the 'net' judgment is entered." *Id.* at 649.

¶ 33 In *Mountain States Broad. Co. v. Neale*, 783 P.2d 551 (Utah Ct.App.1989)

(mem. dec.), this court's memorandum decision on a petition for rehearing, we further stated that some circumstances present "the need for a flexible and reasoned approach to deciding in particular cases who actually is *the* prevailing party." *Id.* at 557. "Consistent with that view, we point out that nothing in our opinion should be taken to suggest that the net judgment rule can be mechanically applied in all cases, although it will usually be at least a good starting point." *Id.*

¶ 34 The Utah Supreme Court approved this approach in *A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, 94 P.3d 270, where it extended the "flexible and reasoned approach" from the context of contract disputes to claims brought under a mechanics' lien statute. *See id.*, 2004 UT 47 at ¶¶ 15–16, 94 P.3d 270. As this court recently noted, "the *Whipple* court determined that the flexible and reasoned approach 'requires not only consideration of the significance of the net judgment in the case, but also [requires] looking at the amounts actually sought and then balancing them proportionally with what was recovered.' " *J. Pochynok Co. v. Smedsrud*, 2007 UT App 88, ¶ 11, 157 P.3d 822 (alteration in original) (quoting *Whipple*, 2004 UT 47 at ¶ 26, 94 P.3d 270).

¶ 35 The Utah Supreme Court granted a petition for certiori in *J. Pochynok Co. v. Smedsrud*, 2005 UT 39, 116 P.3d 353, and observed that the trial court had made no findings of fact or conclusions of law to explain its attorney fees decision. *See id.* at ¶ 5. Consequently, the parties and the court were left to conjecture in determining the trial court's reasoning. "Our difficulty is with the trial court's process, not necessarily the outcome." *Id.* at ¶ 13. The supreme court held that the case should be remanded "to the trial court for a factual determination of awards and offsets," and a ruling regarding any award of attorney fees. *Id.* at ¶ 24.

---

6. Tenants also claim that Landlord's case is frivolous under rules 33 and 34 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 33, 34. We do not agree and therefore do not address attorney fees incurred at trial or on appeal on the basis of frivolousness.

7. Neither party argues that the Renewal Agreement's attorney fees provision negates consideration of who is the prevailing party. We follow their lead, and therefore include prevailing party analysis in our discussion.

¶ 36 Similarly, in this case the trial court did not enter findings of fact and conclusions of law to support its determination that neither party was entitled to attorney fees. Because, unlike *Pochynok,* this case was decided after a bench trial, the trial court is familiar with the rationale for the judgment. Like the supreme court in *Pochynok,* we are concerned "with the trial court's process, not necessarily the outcome." *Id.* at ¶ 13. We therefore remand the issue of attorney fees to the trial court to provide, in the form of findings of fact and conclusions of law, a reasoned rationale for its decision regarding attorney fees. If the result is the same, then the final judgment will stand. If the result changes, the trial court should determine what fees and costs, if any, are awarded to each party, and in what amount.[8]

## CONCLUSION

¶ 37 The trial court properly dismissed Tenants' counterclaims at the summary judgment stage and at trial did not violate the parol evidence rule by accepting evidence that shed light on the premises' habitability during Tenants' residency. Further, we affirm the trial court's equitable offset of the last month's rent, and affirm the award of cleaning and repair costs. We remand to the trial court to enter findings of fact and conclusions of law on the issue of attorney fees, and to render an appropriate judgment.

¶ 38 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

---

8. Because of our resolution of these issues, we need not and do not address the parties' arguments regarding post-trial motions. Further, because the issue was not preserved, we do not address Tenants' claim that a former tenant should have been allowed to testify as an expert.