1999 UT App 130

**Betty L. KESSIMAKIS, Plaintiff and Appellant,**

v.

**Dale M. KESSIMAKIS, Defendant and Appellee.**

**No. 981221–CA.**

Court of Appeals of Utah.

April 22, 1999.

Mitchell R. Barker and Thomas E. Stamos, Salt Lake City, for Appellant.

Eric N. Weeks and E. Nordell Weeks, Salt Lake City, for Appellee.

Before Judges BENCH, JACKSON and ORME.

## OPINION

JACKSON, Judge:

¶ 1  Betty Kessimakis appeals the trial court's factual finding that after their divorce Dale Kessimakis purchased her interest in Kessimakis Produce, Inc. (the Corporation). Ms. Kessimakis also challenges the trial court's rulings that: (1) her action to enforce transfer of the corporate interest to her under the decree was barred by the eight year statute of limitations in Utah Code Ann. § 78–12–22(1) (1996); (2) Mr. Kessimakis did not waive any affirmative defenses; and (3) he did not act in any way that would operate to toll the statute of limitations or lull her into inactivity.  Finally, Ms. Kessimakis challenges the trial court's dismissal of her discovery-related arguments.  We affirm.

## BACKGROUND

¶ 2  The parties were divorced on August 28, 1974.[1]  Paragraph 3(b) of the divorce decree awarded Ms. Kessimakis "[o]ne-half ( ½) of [Mr. Kessimakis's] interest in [the Corporation], whether the same be evidenced by stock certificate or otherwise and [Mr. Kessimakis] is ordered to execute and deliver appropriate instruments evidencing the transfer of such interest."  When the decree was entered, Mr. Kessimakis had a twenty-percent interest in the Corporation, and Ms. Kessimakis was thus awarded a ten-percent interest in the Corporation.  Neither party disputes that upon entry of the decree Ms. Kessimakis became an owner of shares in the Corporation.

¶ 3  On November 10, 1994, Ms. Kessimakis brought a Motion for Order to Show Cause, for Contempt, for Judgment and to Require Payment or Property Conveyance (Order to Show Cause).  She sought, among other things: a judicial confirmation of her ownership in the Corporation, a determination of the value of her interest in the Corporation, a judgment for the value of her interest in the Corporation, and an order requiring Mr. Kessimakis to purchase her interest in the Corporation.

¶ 4  Ms. Kessimakis's Order to Show Cause was heard by a domestic relations commissioner (Commissioner), who recommended that the action be dismissed because it was barred by the applicable statute of limitations.  Ms. Kessimakis objected to the Commissioner's recommendations.

■ ¶ 5  Before her objections could be resolved, Ms. Kessimakis requested a second hearing, asking the Commissioner to determine whether Mr. Kessimakis had already delivered documents evidencing her shares in the Corporation and whether he had already purchased her interest in the Corporation. After this second hearing, the Commissioner recommended a finding that Ms. Kessimakis "did not receive her ten percent" interest in the Corporation.[2]  The Commissioner's Minute Entry did not address whether Mr. Kessimakis had purchased Ms. Kessimakis's share.

¶ 6  Ms. Kessimakis's objection to the Commissioner's first recommendation—that the action be dismissed based on the applicable statute of limitations—was heard by the trial court on February 27, 1996.  The court later issued a minute entry concluding that the eight year statute of limitations applied to the case.  See Utah Code Ann. § 78–12–22(1) (1996).  However, because other questions of fact existed, the matter was finally tried to the bench on May 28, 1997.

¶ 7  On October 17, 1997, the trial court issued Findings of Fact, Conclusions of Law, and an Order.  The court concluded that the eight year statute of limitations applied to the action because Ms. Kessimakis sought to enforce a judgment, and that Mr. Kessimakis had not waived the statute of limitations defense or any other available affirmative defenses.  The court calculated that the statute began to run on June 2, 1978, when the

---

1.  Mr. Kessimakis twice appealed the decree of divorce to the Utah Supreme Court, and the decree was upheld each time.  *See Kessimakis v. Kessimakis*, 580 P.2d 1090 (Utah 1978); *Kessimakis v. Kessimakis*, 546 P.2d 888 (Utah 1976).

2.  Ms. Kessimakis asserts that because Mr. Kessimakis did not object to the Commissioner's rec- ommended finding, it became the "law of the case" and the trial court was bound to follow it. However, a commissioner can only *recommend* findings, and the trial court is never bound by them.  *See Moon v. Moon*, 973 P.2d 431, 434 n. 3 (Utah Ct.App.1999); Utah Code Jud. Admin. R6–401(6).

second appeal of the decree was concluded. Because this action was brought more than eight years after that date, Ms. Kessimakis's action was untimely. Further, the court concluded that Mr. Kessimakis had not done anything that would operate to toll or stay the statute of limitations, nor had he lulled Ms. Kessimakis into inactivity. In the alternative, the court found that Mr. Kessimakis presented sufficient evidence to show that he had purchased Ms. Kessimakis's interest in the Corporation. Finally, the court dismissed Ms. Kessimakis's discovery-related arguments. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Ms. Kessimakis's challenge to the trial court's finding that Mr. Kessimakis had purchased her interest in the Corporation presents a question of fact which we will overturn only if it is clearly erroneous. *See* Utah R. Civ. P. 52(a) (stating in bench trial, "findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"); *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). Whether "a statute of limitation ha[s] expired is a question of law which we review for correctness, giving no particular deference to the lower court." *Gramlich v. Munsey*, 838 P.2d 1131, 1132 (Utah 1992). Because of our disposition of these issues, we need not reach Ms. Kessimakis's other arguments on appeal.

## ANALYSIS

¶ 9 The parties make essentially the same arguments on appeal as they made at trial. Ms. Kessimakis asserts she never received a stock certificate or any other evidence of her ownership in the Corporation. Further, she argues Mr. Kessimakis assured her, over a fifteen-year period, that he knew he needed to give her a stock certificate but was afraid doing so would cause strife with his father and brother, the other owners of the Corporation. She asserts Mr. Kessimakis repeatedly assured her that she would be "taken care of" financially, and that she believed Mr. Kessimakis was holding her interest in constructive trust for her.

¶ 10 Ms. Kessimakis also argues Mr. Kessimakis never purchased her interest in the Corporation. To support this contention, she asserts that Mr. Kessimakis's father, Mike Kessimakis, willed Mr. Kessimakis a ten-percent greater share in the Corporation than his brother got to compensate Mr. Kessimakis for the share he had to give Ms. Kessimakis.

¶ 11 In contrast, Mr. Kessimakis argues he delivered a certificate of ownership in the Corporation to Ms. Kessimakis in 1976. He also contends that he purchased Ms. Kessimakis's interest in the Corporation in 1980 or 1981. He says he did so through the proceeds of a joint stock trading account established in both his and Ms. Kessimakis's names at Wilson–Davis, a local brokerage, with Ms. Kessimakis's brother acting as their broker. Both parties had individual stock accounts at Wilson–Davis in addition to the joint stock account. Mr. Kessimakis testified that he put about $18,000 in the account, and Ms. Kessimakis testified that she put about $6,000 in the account.

¶ 12 Little concrete information about the stock account is available because many of the records have been lost. However, testimony at trial showed that about $26,000 was paid out of the joint stock account. Some of the proceeds were paid to Mr. Kessimakis in cash, and some were transferred directly to his personal account at Wilson–Davis. Mr. Kessimakis argued that—as was his practice with alimony, child support, and all his other personal financial matters—he withdrew cash from the joint stock account with which he then purchased Ms. Kessimakis's interest in the Corporation.

¶ 13 · Ms. Kessimakis argues that she never received any of the joint account's proceeds. However, she paid income tax on one-half the proceeds. She also disputes that a purpose of the account was to purchase her interest in the Corporation. She asserts instead that the account was established so that the parties, who were then on friendly terms, could invest money together and, perhaps, work towards a reconciliation.

¶ 14 The parties' dispute centers around paragraph 3(b) of the Decree of Divorce, which: (1) awarded Ms. Kessimakis "[o]ne-half (½) of [Mr. Kessimakis's] interest in [the Corporation], whether the same be evidenced

by stock certificate or otherwise" *and* (2) ordered Mr. Kessimakis to "execute and deliver appropriate instruments evidencing the transfer of such interest." We address each of these issues separately.

## I. Award of Interest in the Corporation

¶ 15 Neither party disputes that, at some point, Ms. Kessimakis owned shares in the Corporation. Thus, the first requirement of Paragraph 3(b) was satisfied by operation of the terms of the decree—Ms. Kessimakis was awarded one-half Mr. Kessimakis's interest in the Corporation. The question before the trial court, then, was not whether she received an interest in the corporation, but rather, what happened to her interest.

¶ 16 The lower court found that "there is sufficient evidence and testimony to show that [Ms. Kessimakis] was paid for her interest." The trial court is uniquely situated to judge matters bearing on the weight and credibility that should be given to evidence, and we will not overturn the court's ruling in this regard unless it is clearly erroneous. *See Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987). Additionally, this case is complicated by the virtual absence of documentary evidence and by the fact that the trial court had little more to rely on than the parties' own conflicting testimony. Ms. Kessimakis presented evidence that Mr. Kessimakis had not purchased her interest, while Mr. Kessimakis presented evidence that he had purchased her interest. After thoroughly reviewing the record, we cannot say that the court's finding was clearly erroneous. Accordingly, we affirm the court's ruling.

## II. The Claim for Enforcement

¶ 17 Ms. Kessimakis's action also presents a request for enforcement of the decree's requirement that Mr. Kessimakis "execute and deliver appropriate instruments

evidencing the transfer" of an interest in the Corporation to Ms. Kessimakis. This provision of the decree created a judgment in Ms. Kessimakis's favor. *See* Utah R. Civ. P. 54(a) (defining "judgment" as "includ[ing] a decree and any order from which an appeal lies"). Ms. Kessimakis's action is thus subject to the eight year statute of limitations. *See* Utah Code Ann. § 78–12–22(1) (1996) ("An action may be brought within eight years ... upon a judgment or decree of any court of the United States, or of any state ... within the United States.").

¶ 18 Statutes of limitations reflect our understanding that a party will generally choose to pursue a valid claim, rather than waiting indefinitely to do so. *See* 51 Am. Jur.2d *Limitation of Actions* § 17 (1970). They " 'attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.' " *Lund v. Hall*, 938 P.2d 285, 291 (Utah 1997) (quoting *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971)). In this case, the passage of time has created precisely those difficulties: the parties possess little evidence, documentary or otherwise, and several potential witnesses have died. We are thus faced with exactly the situation that statutes of limitations are meant to prevent.[3]

¶ 19 We agree with the trial court that Ms. Kessimakis's effort to require Mr. Kessimakis to deliver documents of title showing her interest in the Corporation is barred by the eight year statute of limitations. *See* Utah Code Ann. § 78–12–22(1) (1996). Accordingly, we affirm the trial court's conclusion in this regard as well.[4]

## CONCLUSION

¶ 20 Because it was not clearly erroneous, we affirm the trial court's factual finding

---

3. Ms. Kessimakis makes the novel argument that applying the statute of limitations would "extinguish" the corporate ownership interest awarded to her. Even if we assume that Mr. Kessimakis had *not* purchased her interest, the bar of the statute of limitations would not extinguish the award of a corporate ownership interest. Rather, the bar would simply prevent Ms. Kessimakis from enforcing the decree's provision that required Mr. Kessimakis to deliver evidence of title to her.

4. We have considered all issues raised on appeal by Ms. Kessimakis, including her equitable arguments, and conclude that they are without merit. Accordingly, we do not address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (stating that we "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"). In addition, we conclude Mr. Kessimakis's request for attorney fees is without merit. *See id.*

that Mr. Kessimakis purchased Ms. Kessimakis's interest in the Corporation. Further, we affirm the trial court's ruling that the eight year statute of limitations bars Ms. Kessimakis's action to compel Mr. Kessimakis to deliver evidence of title.

¶ 21 Affirmed.

¶ 22 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.