*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2014 UT 21**

IN THE

SUPREME COURT OF THE STATE OF UTAH

MARK LAWRENCE JOHNSON,
*Respondent and Appellant,*

*v.*

ELIZABETH JOHNSON nka ELIZABETH ZORIC,
*Petitioner and Appellee.*

No. 20120229
Filed June 20, 2014

On Certiorari to the Utah Court Appeals

Second District, Farmington
The Honorable David M. Connors
No. 840735185

Attorneys:

Troy L. Booher, Erin K. Burke, Salt Lake City, for appellant

Bryce M. Froerer, Ogden, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

**INTRODUCTION**

¶ 1   On certiorari, we consider whether our court of appeals erred when it held that an action to enforce the ongoing right to collect a portion of pension retirement benefits was not barred by the statute of limitations.  We also consider whether the court of appeals erred when it determined that the petitioner's argument concerning laches was inadequately briefed according to the standards set by the Utah Rules of Appellate Procedure.  Lastly, we consider whether a panel majority of the court of appeals erred in applying the "marital foundation" approach to determine the amount of a pension that constitutes marital property.  We

affirm the court of appeals in part, reverse in part, and remand to the district court for further proceedings consistent with this opinion.

## BACKGROUND[1]

¶ 2 Petitioner Mark Lawrence Johnson and Respondent Elizabeth Ann Johnson, née Zoric, married in 1974 and divorced in 1984. During the parties' ten-year marriage, Mr. Johnson accrued approximately ten years of service in the United States Air Force. At the time of the divorce, he was a staff sergeant with a pay grade of E-5. Because Mr. Johnson's pension required twenty years to vest, at the time of the divorce the district court was unable to determine a specific monetary amount that would be owed to Ms. Zoric as her marital property portion of Mr. Johnson's potential future retirement benefit.[2] The district court's decree instead awarded Ms. Zoric "1/2 of 10 years of [Mr. Johnson]'s retirement."

¶ 3 Ms. Zoric first attempted to enforce her right to a portion of Mr. Johnson's future retirement benefits in 1998, but her application was denied by the Defense Financing and Accounting Service (DFAS) on the grounds that the divorce decree lacked specificity. Ms. Zoric is alleged to have made statements around this time to the parties' son to the effect that she did not intend to seek her marital portion of Mr. Johnson's retirement. Mr. Johnson claims that the parties' son conveyed these statements to him and he consequently "made substantial changes to his life financially."

¶ 4 At the time of his retirement in 1999, Mr. Johnson was a master sergeant with a pay grade of E-7, having completed twenty-four years of service. His monthly payment under the pension was calculated based on his pay grade and number of years of service at retirement. In September 2000, Mr. Johnson received a veteran's disability award for ailments that arose after his divorce from Ms. Zoric. Mr. Johnson's final retirement benefit

---

[1] The background facts are also set forth in the decision of the court of appeals. *See Johnson v. Johnson*, 2012 UT App 22, ¶¶ 2–5, 270 P.3d 556.

[2] While Mr. Johnson's pension required twenty years to vest, his monthly payments would not start until he retired some time after it had vested.

was reduced by the amount that he received under the disability award.

¶ 5 In October 2008, Ms. Zoric filed in district court for a Qualified Domestic Relations Order (QDRO) in another attempt to secure her portion of Mr. Johnson's retirement benefit. The district court, in an effort to comply with the 1984 divorce decree, awarded Ms. Zoric her marital share of Mr. Johnson's actual monthly benefit, based on his salary at the time of retirement and his number of years of service, less the disability reduction.[3] The district court determined the doctrine of laches barred Ms. Zoric from recovering any portion of the benefits that had already been paid to Mr. Johnson before she filed for the clarifying order in October 2008. Mr. Johnson appealed. The court of appeals affirmed the district court's order awarding Ms. Zoric ongoing payments based on Mr. Johnson's actual retirement benefit.[4]

¶ 6 Mr. Johnson petitioned this court for review of the statute of limitations and laches issues, and in the alternative, which approach should apply to determine the amount owed to Ms. Zoric from Mr. Johnson's retirement benefit. We granted his petition and have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## STANDARDS OF REVIEW

¶ 7 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court."[5] We review the court of appeals' determination of the question of whether the statute of

---

[3] The district court awarded Ms. Zoric's share without first deducting for federal, state, and local taxes.

[4] *Johnson*, 2012 UT App 22, ¶ 32. The court of appeals remanded to the district court for the deduction of taxes before determining Ms. Zoric's entitlement amount. *Id.* ¶¶ 32–33. That decision is not at issue and we make no changes to that determination.

[5] *State v. Harker*, 2010 UT 56, ¶ 8, 240 P.3d 780 (internal quotation marks omitted).

limitations[6] bars Ms. Zoric's claim for correctness, granting no deference to the court of appeals.[7]

¶ 8   Mr. Johnson alleges that the court of appeals erred when it refused to consider his laches argument because the court determined the argument to be inadequately briefed.   "On certiorari, we review the decision of the court of appeals for correctness."[8]   "It is well established that a reviewing court will not address arguments that are not adequately briefed."[9]   "In deciding whether an argument has been adequately briefed, we look to the standard set forth in rule 24(a)(9) of the Utah Rules of Appellate Procedure."[10]   If this court determines that the laches argument was briefed satisfactorily, the question of laches presents a mixed question of law and fact.[11]

¶ 9   The parties also dispute whether the district court's application of the marital foundation approach should be reviewed for an abuse of discretion or correctness.[12]   We answer this question below.

## ANALYSIS

### I.  THE STATUTE OF LIMITATIONS DOES NOT BAR THE RIGHT TO FUTURE PAYMENTS

¶ 10   The parties' divorce decree states:  "That [Ms. Zoric] be, and is hereby awarded 1/2 of 10 years of [Mr. Johnson]'s military

---

[6] *See* UTAH CODE § 78B-2-311.

[7] *Arnold v. Grigsby*, 2009 UT 88, ¶ 7, 225 P.3d 192.

[8] *Nolan v. Hoopiiaina (In re Hoopiiaina Trust)*, 2006 UT 53, ¶ 19, 144 P.3d 1129 (internal quotation marks omitted).

[9] *Schefski ex rel. Coleman v. Stevens*, 2000 UT 98, ¶ 7, 17 P.3d 1122 (internal quotation marks omitted).

[10] *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998).

[11] *Johnson v. Johnson*, 2012 UT App 22, ¶ 9, 270 P.3d 556 ("We review the trial court's legal conclusions for correctness and its factual findings for clear error.").

[12] A majority of the court of appeals held that the correct standard of review to be applied to a district court's equitable distribution of pension benefits is abuse of discretion.  A minority of the court of appeals applied a correctness standard of review. *See Johnson*, 2012 UT App 22, ¶¶ 6, 36.

retirement." In 1998, before Mr. Johnson retired from the military, Ms. Zoric attempted to file the decree with DFAS in an effort to secure her portion of Mr. Johnson's future pension payments. DFAS denied the request on the basis that the decree lacked the required specificity. Ms. Zoric did not take any further action to secure payment until October 2008, when she filed the underlying action requesting a clarifying order or QDRO.[13] In that action, the district court held the doctrine of laches barred Ms. Zoric from recovering her portion of the benefits that had been paid to Mr. Johnson from the time of his retirement until she filed for a clarifying order, but awarded her a share of the ongoing benefits paid to Mr. Johnson from when she filed the action for the clarifying order.[14]

¶ 11 Mr. Johnson alleges that the statute of limitations serves to wholly bar Ms. Zoric's claim to any portion of Mr. Johnson's retirement benefit.[15]

---

[13] A QDRO instructs "the trustee of a retirement plan and specifies how distributions should be made, to whom, and when. Although a QDRO cannot order the payment of a benefit which is not allowed under a particular plan, it can order partial payment to an alternate payee (an ex-spouse, for example)." *Bailey v. Bailey*, 745 P.2d 830, 832 (Utah Ct. App. 1987).

[14] *Johnson v. Johnson*, 2012 UT App 22, ¶ 5, 270 P.3d 556. In the district court's findings of fact and conclusions of law, the court concluded:

> It is uncontroverted that on August 7, 1998, [Ms. Zoric] made application to the Air Force to claim her interest in [Mr. Johnson]'s retirement. Because of some improprieties in the manner in which the claim was submitted, it was rejected. The evidence is controverted as to whether or not [Ms. Zoric] ever communicated whether she intended to give up that retirement or not, but the parties did not discuss with one another whether or not [Ms. Zoric] would pursue her claim. It is clear, however, that in the summer and fall of 1998 she intended to do so.

[15] In her briefing to the court of appeals, Ms. Zoric contended that Mr. Johnson "failed to raise the issue of the statute of

¶ 12 The statute of limitations for judgments states that "[a]n action may be brought within eight years upon a judgment or decree of any court of the United States, or of any state . . . within the United States"[16] and is intended to "reflect our understanding that a party will generally choose to pursue a valid claim, rather than waiting indefinitely to do so."[17] Mr. Johnson contends that Ms. Zoric's claim should be denied because she "failed to do anything to secure any kind of payment on that decree until 2008, nearly twenty-four (24) years after the decree had been entered, but more importantly, more than nine (9) years after [Mr. Johnson's] retirement."

¶ 13 To assess whether the statute of limitations bars Ms. Zoric's claim to ongoing payments,[18] we must first determine whether the claim that she is asserting is discrete or continuing. The United States Court of Federal Claims addressed a similar issue in *Baka v. United States*,[19] wherein a former member of the military filed suit against the United States, alleging that DFAS improperly awarded a portion of his military pension to his former spouse.[20] The court held that each payment challenged by Mr. Baka was subject to its own statute of limitations:

> The continuing claims doctrine operates to save parties who have pled a series of distinct events— each of which gives rise to a separate cause of action—as a single continuing event. In such cases, the continuing claims doctrine operates to

limitations at trial." Mr. Johnson did not file a reply brief before the court of appeals. Regardless, because the court of appeals' decision addressed Mr. Johnson's statute of limitations argument on its merits and we review the decision of the court of appeals, we will likewise decide the matter on its merits. *See Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 11, 52 P.3d 1267.

[16] UTAH CODE § 78B-2-311.

[17] *Kessimakis v. Kessimakis*, 1999 UT App 130, ¶ 18, 977 P.2d 1226.

[18] Ms. Zoric does not challenge the district court's laches ruling preventing her from collecting her portion of the payments paid before she filed for the clarifying order.

[19] 74 Fed. Cl. 692 (2008).

[20] *Id*. at 693.

save later arising claims even if the statute of limitations has lapsed for earlier events.[21]

¶ 14 The court clarified that "[i]n order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."[22] "In military pay cases, a threshold question can be framed as whether the plaintiff is challenging the *quantum* of pay to which he is undisputedly entitled, or whether he is challenging his right to receive pay at all."[23] The court concluded that Mr. Baka's claim was continuing because "[t]he claim can be divided into discrete wrongs, each of which is deemed to have accrued in the month when the Government withheld a portion of Mr. Baka's retirement pay for the benefit of his former wife."[24]

¶ 15 Mr. Johnson argues that because the parties' 1984 divorce decree did not specify an amount owed by him, *Baka* does not serve to establish a continuing claim. Specifically, Mr. Johnson attempts to find support for his argument in a footnote of *Baka*:

> Cases in which a plaintiff undisputedly is entitled to *some* pay more plainly fall into the continuing claims category. On the other hand, where a plaintiff has received *no* pay for the limitations period, and plaintiff's entitlement to pay is *itself* disputed, the Government's failure to pay plaintiff has not been regarded as periodic Government action for purposes of the continuing claims doctrine.[25]

¶ 16 Mr. Johnson requests that this court "hold that where the legal right unexercised within the limitation period is the right to establish payment obligations, the failure to exercise that right forfeits all benefits." We decline to do so.

---

[21] *Id*. at 695–96 (internal quotation marks omitted).

[22] *Id*. at 696 (alteration in original) (internal quotation marks omitted).

[23] *Id*.

[24] *Id.* at 697.

[25] *Id*. at 696 n.5.

¶ 17   While it is clear that Ms. Zoric could, and likely should, have taken action to secure Mr. Johnson's payment obligations before she filed for the QDRO in 2008,[26] she was granted a clear and unequivocal right to "1/2 of 10 years of [Mr. Johnson]'s military retirement" in the parties' 1984 divorce decree.   The portion of Mr. Johnson's pension that he earned during the parties' marriage constituted an award of marital property, payment of which was delayed until the time when Mr. Johnson retired.   "The right to retirement benefits is a right to draw[] from [a] stream of income that . . . begins to flow on retirement, as that stream is then defined."[27]   Mr. Johnson argues that Ms. Zoric's claim is itself disputed and therefore not a continuing claim.   Ms. Zoric's right to payments as it was established in the divorce decree was not itself disputed, and it was only her delay in filing for enforcement of the order that provides Mr. Johnson a basis for contesting that award.   Mr. Johnson's reliance on the language from *Baka* conflates the preliminary question of whether a claim is continuing with the argument that the right to payments is now disputed because the claim was not asserted within a certain time.[28]   Mr. Johnson's affirmative defenses cannot unilaterally transform Ms. Zoric's claim out of the realm of a continuing claim.

---

[26] The district court acknowledged as much in its Revised Findings of Fact and Conclusions of Law in its finding that "[a]lthough a Clarifying Order should have been filed shortly after the Decree was entered, this matter is properly before the Court."

[27] *Lehman v. Lehman (In re Marriage of Lehman)*, 955 P.2d 451, 454 (Cal. 1998) (alterations in original) (internal quotation marks omitted).

[28] To the extent that Mr. Johnson contends that the divorce decree did not establish Ms. Zoric's right to a portion of his retirement because a further clarifying order was necessary, this argument is not persuasive.   Ms. Zoric was not limited to filing for a QDRO in order to enforce her right to payments.   In its September 1998 letter, DFAS cited the Code of Federal Regulations as a basis for denying her claim at that time.   The DFAS letter clarified that it was not that the order itself was invalid, but rather that "[a] court order that provides for a division of retired pay by means of a formula wherein the elements of the formula are not specifically set forth or readily

¶ 18 The court of appeals held that Mr. Johnson's argument was "foreclosed" by *Seeley v. Park*,[29] which held that "[i]nstallments under a decree of divorce for alimony or support of minor children become final judgments as soon as they are due and cannot thereafter be modified."[30] As a result, "the statute

---

apparent on the face of the court order *will not be honored* unless clarified by the court." (Emphasis added) (citing 32 C.F.R. 63.6(c)(8)).

In its order granting ongoing payments to Ms. Zoric, the district court held that Ms. Zoric was entitled to payments from "October 1, 2008 to the present, and payments are to begin May 1, 2009. Application is to be made through the Air Force for those benefits, but until such time as those deductions are automatically made, they are to be paid directly by Petitioner to Respondent." Further, under DFAS requirements,

> . . . for a former spouse to qualify for direct payments of retired pay as property . . . , the former spouse must have been married to the member for 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay (the 10/10 requirement). . . . If the 10/10 requirement is not met, *it does not mean that a former spouse's retired pay award is invalid.* It means only that it cannot be enforced by direct payments under the USFSPA.

*Frequently Asked Questions*, DEF. FIN. & ACCT. SERV., http://www.dfas.mil/garnishment/usfspa/faqs.html (Frequently Asked Question #4) (emphasis added) (last updated Aug. 8, 2013). Therefore, the divorce decree could be independently valid, separate and apart from the availability of enforcement options through DFAS. A court could directly hold Mr. Johnson responsible for payments through its own order, and application through DFAS serves the supplemental role as a mechanism for garnishing payments. Further, if the district court's 1984 order had laid out a specific formula for determining Ms. Zoric's future payments, no further clarifying order would have been necessary.

[29] 532 P.2d 684 (Utah 1975).

[30] *Seeley*, 532 P.2d at 684.

begins to run against the judgment from the time fixed for the payment of each installment for the part then payable."[31] We agree with the analysis of the court of appeals extending the rationale in *Seeley*—addressing alimony and child support payments—to pension payments because "[a]lthough *Seeley* did not expressly address pension benefits, we see no reason . . . why it should not apply to them."[32]

¶ 19  Mr. Johnson attempts to distinguish this case from *Seeley* on the basis that "the former spouse in *Seeley* failed to seek a legal remedy for specific unpaid payment obligations to which she was legally entitled, whereas Zoric failed to *establish* her right to receive specific payments."  As a result of the entry of the 1984 divorce decree, Ms. Zoric has retained the right to her portion of Mr. Johnson's pension benefits.[33]  While DFAS did not honor the 1984 divorce decree as written because it did not specify the pay grade at which Ms. Zoric should receive "1/2 of 10 years" worth of Mr. Johnson's pension, this circumstance did not put Ms. Zoric's entitlement to payments in dispute.  Just as Ms. Zoric cannot compel her share of Mr. Johnson's pension payments to be paid to her until each is payable to Mr. Johnson, the statute of limitations does not bar Ms. Zoric's share to future payments before the statute of limitations on each individual payment has run.[34]  Therefore, each pension payment Mr. Johnson received

---

[31] *Id*. at 685.

[32] *Johnson*, 2012 UT App 22, ¶ 27.

[33] The delayed nature of the award reflects why the traditional statute of limitations cases relied on by Mr. Johnson are distinguishable. *See, e.g., Kessimakis*, 1999 UT App 130, ¶¶ 17–19; *Lund v. Hall*, 938 P.2d 285, 288–91 (Utah 1997).  In those cases, a judgment is clearly and unequivocally enforceable at the time, but for whatever reason the plaintiff opted not to enforce the order within the statute of limitations period.  Here, Ms. Zoric could not receive payments under the district court's divorce decree until Mr. Johnson chose to retire.

[34] *See Koelsch v. Koelsch*, 713 P.2d 1234, 1239 (Ariz. 1986) ("[P]ension plans are a form of deferred compensation to employees for services rendered, and any portion of the plan earned during marriage is a community property subject to equitable division at dissolution. . . . [D]uring marriage[,] a husband and wife have an equal, immediate, present, and vested

was subject to its own discrete statute of limitations. The court of appeals did not err when it affirmed the district court's order holding that Ms. Zoric was entitled to her share of Mr. Johnson's ongoing pension payments from the date that she filed for the clarifying order.[35]

## II. THE COURT OF APPEALS DID NOT ERR WHEN IT REFUSED TO ADDRESS MR. JOHNSON'S LACHES ARGUMENT BECAUSE IT WAS INADEQUATELY BRIEFED

¶ 20 We next consider whether the court of appeals erred as a matter of law when it refused to consider Mr. Johnson's laches argument because it was inadequately briefed.[36] "We have repeatedly warned that [appellate courts] will not address arguments that are not adequately briefed, and that we are not a depository in which the appealing party may dump the burden of argument and research."[37] An adequately briefed argument contains "the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on."[38] "Mere bald citation to authority, devoid of any analysis, is not

interest in the community assets. When the community property is divided at dissolution . . . , each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court. It is clear that a former spouse loses any interest in and control over that separate property." (citations omitted)).

[35] *Johnson*, 2012 UT App 22, ¶ 28; *see also id.* ¶ 24 & n.6 (stating that Ms. Zoric does not challenge the district court's application of the doctrine of laches to bar her right to payments received by Mr. Johnson before she filed for the clarifying order).

[36] *See State v. Brooks*, 908 P.2d 856, 859 (Utah 1995); *see also Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief.").

[37] *Hess v. Canberra Dev. Co., LC*, 2011 UT 22, ¶ 25, 254 P.3d 161 (internal quotation marks omitted).

[38] UTAH R. APP. P. 24(a)(9).

adequate. And we may refuse, sua sponte, to consider inadequately briefed issues."[39]

¶ 21 In his briefing on laches before the court of appeals, Mr. Johnson cited two New York cases[40] but failed to lay out the elements of laches, did not provide specific citations to analysis within the cases, did not discuss the elements of laches or apply them to his case, and failed to discuss whether New York's law on laches is even comparable to Utah law. Utah does not suffer from a dearth of case law concerning laches.[41] While we do not go so far as to hold that Mr. Johnson was required to cite case law from Utah in support of his argument, his analysis was so sparse as to not specify the elements of laches. And while Mr. Johnson's brief contained record citations in another section, his laches argument failed to engage in any sort of analysis between the case law that he did cite and the facts of this case.[42] We therefore affirm the

---

[39] *State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179 (internal quotation marks omitted).

[40] *O'Dette v. Guzzardi*, 204 A.D.2d 291 (N.Y. App. Div 1994); *Cotumaccio v. Cotumaccio*, 171 A.D.2d 723 (N.Y. App. Div. 1991).

[41] *See, e.g., Fundamentalist Church of Jesus Christ of Latter-day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502 ("In Utah, laches traditionally has two elements: (1) [t]he lack of diligence on the part of plaintiff and (2) [a]n injury to defendant owing to such lack of diligence." (alterations in original) (internal quotation marks omitted)); *Fundamentalist Church of Jesus Christ of Latter-day Saints v. Lindberg*, 2010 UT 51, ¶ 27, 238 P.3d 1054 (citing the same elements); *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1260 (Utah 1975) (citing the same elements); *Nicolds v. Utah Bd. of Pardons & Parole*, 2012 UT App 123, ¶ 4, 277 P.3d 652 (citing the same elements); *Collard v. Nagle Constr., Inc.*, 2002 UT App 306, ¶ 28, 57 P.3d 603 ("Laches bars a recovery when there has been a delay by one party causing a disadvantage to the other party."); *Nilson-Newey & Co. v. Utah Resources Int'l,* 905 P.2d 312, 314 (Utah Ct. App. 1995) ("To successfully assert laches one must establish that (1) plaintiff unreasonable delayed in bringing an action, and (2) defendants were prejudiced by that delay.")..

[42] *See State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) ("Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.").

decision of the court of appeals to decline to address Mr. Johnson's laches argument on the basis of inadequate briefing.

## III. THE COURT OF APPEALS ERRED WHEN IT AFFIRMED THE DISTRICT COURT'S DETERMINATION OF MS. ZORIC'S SHARE OF MR. JOHNSON'S RETIREMENT BENEFIT

¶ 22 Mr. Johnson alleges that the court of appeals erred in applying the marital foundation approach rather than the bright line or other context-specific approach to determine what portion of his pension should be awarded to Ms. Zoric. Mr. Johnson also argues that the court of appeals erred in applying an abuse of discretion rather than a correctness standard of review, but contends that under either standard, the district court's pension award determination should be reversed

### A. The District Court's Determination of Equitable Distribution of Marital Property Is Reviewed for an Abuse of Discretion

¶ 23 An appellate court's review of a district court's determination of which pay grade to apply to determine a former spouse's marital portion of an employee spouse's retirement benefit is subject to an abuse of discretion standard. "A [district] court has considerable discretion considering property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity. We will disturb the [district] court's division only if there is a misunderstanding or misapplication of the law . . . indicating an abuse of discretion."[43] As explained below, the district erroneously believed it was bound by the marital foundation approach, and in so doing, misunderstood and misapplied the law.[44] Thus, the district court abused its discretion and we reverse the court of appeals and remand to the district court for further proceedings consistent with this opinion.

---

[43] *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 16, 147 P.3d 464 (second alternation in original) (internal quotation marks omitted); *see also Featherstone v. Schaerrer*, 2001 UT 86, ¶ 41, 34 P.3d 194 (explaining that applying an incorrect legal standard is an abuse of discretion).

[44] *See infra* Part III.B.

*B. The Court of Appeals Erred when It Affirmed the District Court's Award Granting Ms. Zoric Her Marital Fraction of Mr. Johnson's Actual Retirement Benefits*

¶ 24 The district court in this case was faced with the issue of how to determine the appropriate portion of Mr. Johnson's pension benefits to award Ms. Zoric. Specifically, the parties disagreed as to whether the district court should include postdivorce increases to Mr. Johnson's pension benefits when calculating Ms. Zoric's pension benefit award. The district court, relying on our precedent in *Woodward v. Woodward*,[45] held that Ms. Zoric was entitled to an award that included the postdivorce increases in Mr. Johnson's pension benefits. A divided panel of the court of appeals affirmed that decision. As discussed below, the district court's reliance solely on *Woodward* was misplaced. As such, the district court applied the wrong legal standard, and in so doing, abused its discretion.[46] On this issue, we reverse the court of appeals and remand to the district court.

¶ 25 On certiorari, Mr. Johnson argues that Ms. Zoric's share of his retirement benefit should be based on his pay grade at the time of the parties' divorce or the present-day salary for his pay grade at the time of divorce, rather than his pay grade and salary at the time of his retirement. We begin by noting that a former spouse is entitled to an equitable distribution of an employee spouse's retirement or pension benefits that "accrue[] in whole or in part during the marriage."[47]

¶ 26 We have established that a nonemployee spouse is entitled to receive "a portion of the retirement benefits represented by the number of years of the marriage divided by the number of years of the [employee spouse's] employment."[48] This has become known as the "time rule" formula. A number of jurisdictions have adopted this time rule formula to determine the "marital fraction," which determines the martial interest in

---

[45] 656 P.2d 431 (Utah 1982).

[46] *See Featherstone,* 2001 UT 86, ¶ 41 (explaining that applying an incorrect legal standard is an abuse of discretion).

[47] *Woodward*, 656 P.2d at 433.

[48] *Id.* at 433–34.

pension benefits.[49] The marital fraction is calculated by dividing the number of years (or months) that the employee spouse has earned toward the pension during the marriage by the number of years (or months) of total service toward the pension.[50] The marital fraction is then multiplied by the employee spouse's monthly benefit that is subject to equitable distribution.[51] Each spouse is then awarded one-half of the marital interest in the pension that is subject to equitable distribution.[52] Mathematically, the formula is:

$$\frac{\text{years of service during marriage}}{\text{years of total service}} \times \text{monthly benefit} \times 1/2$$

When a court invokes this formula, there are two unknowns at the time of divorce: the years of total service and the amount of the monthly benefit. Once the employee spouse retires, the years of total service factor is known and can be plugged into the equation to determine the marital fraction. In the present case, the parties were married for ten years, during which time Mr. Johnson accrued ten years of qualifying service. Mr. Johnson retired after twenty-four years of qualifying service. Using the time rule formula above, the parties were married for 41.6 percent of the time Mr. Johnson was employed by the Air Force, and Ms. Zoric's half of that portion is 20.8 percent. The parties agree on this calculation.[53]

¶ 27 The remaining unknown factor at the time of divorce, and what the parties dispute in this case, is the amount of the

---

[49] *See, e.g.*, *In re Marriage of Hunt*, 909 P.2d 525, 532 (Colo. 1995); *Stouffer v. Stouffer*, 867 P.2d 226, 231 (Haw. Ct. App. 1994); *Warner v. Warner*, 651 So. 2d 1339, 1340 (La. 1995); *Lynch v. Lynch*, 665 S.W.2d 20, 23–24 (Mo. Ct. App. 1983); *Rolfe v. Rolfe (In re Marriage of Rolfe)*, 766 P.2d 223, 226 (Mont. 1988); *Gemma v. Gemma*, 778 P.2d 429, 431 (Nev. 1989); *Berry v. Meadows*, 713 P.2d 1017, 1023 (N.M. Ct. App. 1986); *Welder v. Welder*, 520 N.W.2d 813, 817 (N.D. 1994).

[50] *In re Marriage of Hunt*, 909 P.2d at 531.

[51] *Id.*

[52] *Id.*

[53] *Johnson v. Johnson*, 2012 UT App 22, ¶¶ 11–15, 270 P.3d 556.

monthly benefit that is to be multiplied by the marital fraction. Though our decision in *Woodward* established the time rule formula as the appropriate method for calculating the marital fraction, we were not presented with the question of how to properly determine the amount of the employee spouse's monthly benefit subject to equitable distribution. That question is squarely presented here. Thus, we must determine whether postdivorce increases in pension benefits that are predicated on increases in the employee spouse's rank and pay grade following the parties' divorce are properly part of the monthly benefit subject to equitable distribution. The district court had several alternatives from which to choose.

¶ 28 At one end of the spectrum is the bright line approach — the approach advocated by Mr. Johnson. The bright line approach "likens post-divorce pension enhancements to post-divorce earnings and characterizes all such increases as the separate property of the employee spouse."[54] Under this approach, "pension benefits accruing as compensation for services rendered after a divorce are not part of the [marital] estate . . . subject to division on divorce."[55] This approach treats any subsequent advancement (and the resulting pay increase) as the separate property of the employee spouse because any such advances or increases result solely from the labors of the employee spouse.[56] A court applying this approach uses the employee spouse's pay grade at the time of the parties' divorce, instead of the pay grade at the time of retirement to calculate the monthly pension benefits.[57] The bright line approach comports with the long-established notion that property acquired after the marriage is generally considered separate property and is, therefore, not

---

[54] *In re Marriage of Hunt*, 909 P.2d at 532.

[55] *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex. 1983) (internal quotation marks omitted).

[56] *Koelsch v. Koelsch*, 713 P.2d 1234, 1238–40 (Ariz. 1986); *Berry*, 647 S.W.2d at 947.

[57] *Shill v. Shill*, 765 P.2d 140, 143–46 (Idaho 1988) (applying the bright line approach where a large increase in pension benefits was due solely to the employee spouse's additional years of work after the divorce, and any cost of living increases gained in four years of marriage would be negligible, based on the average salary of the employee spouse).

subject to distribution along with the martial estate.[58]  This approach is also aligned with our precedent that marital property should be valued at the time of the divorce decree, absent compelling circumstances.[59]

¶ 29 At the other end of the spectrum is the marital foundation approach, which acknowledges that postdivorce *earnings* are separate property, but treats *all* postdivorce *increases* in pension benefits as marital property.[60]  The marital foundation approach is easy to apply, as a district court need only apply the time rule formula to the employee spouse's monthly pension benefit at retirement, with no need to "parse out the 'marital' portion of the post-dissolution enhancement from the 'separate' portion . . . attributable solely to the efforts of the employee spouse."[61]  Furthermore, the marital foundation approach seeks to offset the "risk of forfeiture, delay in receipt, and lack of control over the timing of the receipt of benefits" suffered by the nonemployee spouse by permitting the nonemployee spouse to share in postdivorce enhancements to benefits.[62]

---

[58] *See Koelsch*, 713 P.2d at 1239 ("Finally, it is established law that while the fruits of labor expended during marriage are community property, earnings after dissolution are separate property." (citation omitted)); *In re Marriage of Heupel*, 936 P.2d 561, 572 (Colo. 1997) ("[P]roperty acquired by a spouse after a decree of legal separation is excepted from the definition of marital property. . . ." (internal quotation marks omitted)).

[59] *Goggin v. Goggin*, 2013 UT 16, ¶ 49, 299 P.3d 1079.

[60] *See In re Marriage of Hunt*, 909 P.2d at 534 ("Typically, there is a commingling of effort undertaken during the marriage and after the marriage which together enhance the value of the future benefit.  The employee spouse's ability to enhance the future benefit after the marriage frequently builds on foundation work and efforts undertaken during the marriage.").

[61] *Id.* at 535.

[62] *Id.* at 537.  Counsel for Mr. Johnson stated that the marital foundation approach is the majority approach.  However, a review of the jurisdictions that have adopted the marital foundation approach reveals that most jurisdictions will apply the marital foundation approach when appropriate, but they

¶ 30 The bright line and marital foundation approaches can be thought of as anchoring each end of a spectrum of approaches available to district courts.  Judge Davis, in dissenting from the result adopted by the court of appeals, advocated an approach between these two extremes.[63]  Judge Davis disagreed with both the bright line approach and the marital foundation approach as

---

generally consider it only one of a handful of options available when crafting an equitable remedy.  *See, e.g. McCarthy v. McCarthy*, 704 P.2d 1352, 1354 (Ariz. Ct. App. 1985) ("[I]t was not error for the trial court here to adopt a different but fair method based on the evidence of the value of the community interest in the pension plan and dividing that amount in half."); *Askins v. Askins*, 704 S.W.2d 632, 634 (Ark. 1986) ("The statute gives the [trial court] broad discretion.  It is not the intent of the statute or this opinion to tie the [trial court] to any specific formula for dividing prospective retirement benefits."); *In re Marriage of Adams*, 134 Cal. Rptr. 298, 302 (Cal. Ct. App. 1976) ("As a general rule, in selecting a method to effect distribution of the community interest in retirement rights the court acts in the exercise of judicial discretion and its determination respecting such will not be interfered with on appeal unless an abuse of discretion is shown.  The criterion governing judicial action is reasonableness under the circumstances.  The method adopted may vary with the facts in each case." (internal quotation marks omitted)); *Ranfone v. Ranfone*, 928 A.2d 575, 581 (Conn. App. Ct. 2007) ("[I]t is within the trial court's discretion . . . to choose, on a case-by-case basis, . . . [any] valuation method that it deems appropriate in accordance with [the] law that might better address the needs and interests of the parties. . . .  The touchtone of valuation, as well as the ultimate distribution of pension benefits, is the court's power to act equitably." (first, second, and sixth alterations in original) (internal quotation marks omitted)); *Cohen v. Cohen*, 937 S.W.2d 823, 831–32 (Tenn. 1996) ("The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances.  While the parties are entitled to an equitable division of their marital property, that division need not be mathematically precise.").

[63] *Johnson*, 2012 UT App 22, ¶¶ 37–38 (Davis, J. concurring in part and dissenting in part).

used in the context of this case.[64] Judge Davis would have awarded Ms. Zoric 20.8 percent of the monthly benefit Mr. Johnson would have received had he remained at the E-5 pay grade he attained during the parties' marriage.[65] This would have included normal cost of living increases, but not the increases attributable to Mr. Johnson's promotion to the E-7 pay grade he attained prior to retirement.[66] Judge Davis reasoned that "there is no evidence of any specific contribution made by [Ms.] Zoric to [Mr.] Johnson's earning capacity apart from the fact that she was married to him while he was employed at the E-5 rank."[67] Accordingly, Judge Davis found no reason to award Ms. Zoric the benefit of "all future improvements in [Mr. Johnson's] financial situation merely by virtue of their having been married for some period of time."[68]

¶ 31 Like Judge Davis, we believe that a context-specific approach leads to the most equitable distribution of pension benefits. District courts are charged with making an equitable distribution of marital property, including pension benefits.[69] In making such distribution, the presumptive value of marital property is determined at the time of the divorce, absent compelling circumstances.[70] District courts should also consider a variety of factors when making equitable distributions, including whether the property was acquired during the marriage, the source of the property, and the parties' respective financial conditions.[71] "The appropriate distribution of property var[ies]

---

[64] *Id.* ¶ 37.

[65] *Id.* ¶ 38.

[66] *Id.* ¶ 37.

[67] *Id.* ¶ 37 n.2.

[68] *Id.*

[69] *See* UTAH CODE § 30-3-5(1) (allowing district courts to issue "equitable orders relating to . . . property" in divorce decrees); *Woodward*, 656 P.2d at 433 (holding that pension benefits accrued during the marriage are marital property subject to equitable distribution).

[70] *Goggin*, 2013 UT 16, ¶ 49.

[71] *Id.* ¶ 47.

from case to case, [but] [t]he overriding consideration is that the ultimate division be equitable—that the property be fairly divided between the parties, given their contribution during the marriage and their circumstances at the time of the divorce."[72]  Thus, our precedent has endorsed a context-specific approach that recognizes the various ways marital property can be acquired and then distributed equitably.

¶ 32 When determining the most equitable distribution of the employee spouse's pension benefits, a district court should consider the pension benefits much like it does other marital property.  That is, the district court should consider the extent to which the property was acquired during the marriage and the ultimate source of the property.[73]  In the context of pension benefits, this will require the district court to consider how the trajectory of the employee spouse's career intersected with the marriage and the extent to which the marriage contributed to the employee spouse's pay grade at retirement.  For example, if the parties were married only briefly early in the employee spouse's career, it is highly unlikely that the nonemployee spouse contributed significantly to the employee spouse's ultimate pay grade at retirement.  In such a scenario, there would be no reason to award the nonemployee spouse the benefit of all of the employee spouse's subsequent pay raises, whether they result from promotions, renegotiations of union contracts, or job changes.

¶ 33 On the other hand, if the parties are married for a significant portion of the employee spouse's career, it is much more likely that the nonemployee spouse's contributions impacted the trajectory of the employee spouse's career in a way the court should credit.  This would be especially true in circumstances in which the parties were married while the employee spouse underwent specialized training or schooling that would further his or her career.  To the extent such training or education led to increases in rank or pay grade, the court could see fit to award the nonemployee spouse credit for the resulting

---

[72] *Id.* ¶ 48 (first and third alterations in original) (internal quotation marks omitted).

[73] *Id.* ¶ 47.

increase in pension benefits.[74]   Even in this circumstance, however, it does not stand to reason that the nonemployee spouse would then be entitled to *all* subsequent increases. The district court should, in its discretion, determine what contribution the nonemployee spouse made to the subsequent increases, if any, and award credit only for those fairly attributable to that contribution.

¶ 34 Therefore, the district court is not bound by a specific prescribed approach in determining the most equitable distribution of pension benefits following the dissolution of a marriage, but should evaluate all relevant factors and circumstances in making such a determination.

¶ 35 Based on our review of the record in this case, we find that it is insufficient to determine the extent to which Mr. Johnson's career trajectory was impacted by his marriage to Ms. Zoric.[75]   There is no question that Ms. Zoric's efforts during the marriage helped Mr. Johnson attain the E-5 rank that he held as the time of the parties' divorce. And had Mr. Johnson remained at this rank and merely received his anticipated cost of living increases, Ms. Zoric would have been entitled to share in his monthly pension benefits as they were awarded. But, Mr. Johnson did not remain at the E-5 rank. Mr. Johnson was promoted from Staff Sergeant to Master Sergeant following his divorce from Ms. Zoric, and consequently, his rank and pay were elevated to E-7. The record is unclear as to the extent

---

[74] Utah's property distribution statute directs courts to engage in just such an analysis in the context of alimony. UTAH CODE § 30-3-5(8)(a)(vii) ("The court *shall consider* . . . whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or enabling the payor spouse to attend school during the marriage." (emphasis added)). Because pension benefits are often predicated on the employee spouse's salary at retirement, the court should consider the extent to which efforts of the nonemployee spouse contributed to that salary.

[75] Presumably because neither the district court nor the parties were aware of any need to characterize Mr. Johnson's career trajectory in this manner, there is nothing in the record that sheds any light on the nature of Mr. Johnson's postdivorce promotion.

Mr. Johnson's postdivorce promotion and career trajectory can be fairly attributed to Ms. Zoric's efforts during the marriage. As such, we remand to the district court for further fact-finding with the understanding that the district court is not limited to the marital foundation approach when determining the amount of monthly benefits to insert in to the time rule formula. Rather, the district court is authorized to use any approach it deems necessary to come to the most equitable outcome.

## CONCLUSION

¶ 36 We affirm the decision of the court of appeals in part and reverse and remand in part. Ms. Zoric is not foreclosed by the statute of limitations from receiving ongoing payments from Mr. Johnson's pension because each payment is subject to its own statute of limitations. We decline to reach Mr. Johnson's laches argument because it was inadequately briefed before the court of appeals. Lastly, the trial court abused its discretion when it erroneously concluded that it was bound by the marital foundation approach to determine that Ms. Zoric's marital fraction should be applied to Mr. Johnson's actual retirement benefit, and as such, we reverse and remand to the district court for further fact-finding regarding the equitable distribution of marital property.